## JESSE LAPHAM *vs.* BRADFORD BARNES and WILLIAM HITT.

RUTLA.
*Februa.*
1828.

If A sign a note as surety for B, for a debt due to C, and afterwards execute his own separate note to C for the amount, which is accepted by C as payment, and the old debt is thereby satisfied; this will be considered the same as if so much money had been paid by A, and will support an action against B for money paid to his use.

H signed a note as surety for B. The payee afterwards becoming dissatisfied with the security, B, the principal, procured one L to put his signature to the note as additional security. Afterwards L paid the note to the payee, by executing his own note therefor, and then brought an action against B and H jointly, for money paid, laid out and expended; it was held that such joint action could not be supported.

In such case, L is entitled to a remedy against H to recover his aliquot proportion only; and if he would seek a contribution from H, he must sue him alone.

This was an action of *assumpsit* for money paid, laid out and ex-
pended, to which the defendants pleaded *non assumpsit.* The
facts appearing at the trial were, that in November, 1822, *Joseph
Burr* loaned to *Barnes*, one of the defendants, the sum of $300,

RUTLAND,
February,
1828.

Lapham
vs.
Barnes et al.

and took a note for the same, signed by him, and also by *Hitt*, the other defendant, payable in ninety days. In May, 1823, *Mr. Burr*, being dissatisfied with the security, called upon *Barnes* for additional security, and *Barnes* procured *Lapham*, the plaintiff, to give his security, by putting his signature to the note. On the face of the note, *Barnes*, *Hitt*, and the plaintiff, appeared as joint promissors, and it was not expressed in it that either was a surety. In June, 1824, the plaintiff gave his note to *Mr. Burr*, which *Mr. Burr* received in payment and satisfaction of the former note, and gave up the same to the plaintiff. In July, 1824, an indenture was executed by and between *Barnes*, *Hitt*, and several other persons, by which certain property of *Barnes* was assigned to trustees, for the payment of the debts of *Barnes* therein specified, for which *Hitt*, and several of the other parties to the indenture, had become liable. The indenture, amongst the other debts specified, described the note to *Mr. Burr*, as being for the sum of three hundred dollars, and as signed by *Barnes*, *Hitt*, and the plaintiff, and of which, it recited, the said *Hitt* was holden to pay $150. Evidence was admitted, though objected to, that *Hitt* at the time of writing the indenture, instructed the attorney who drew it, that he was a co-surety with the plaintiff on the note, and as such, was holden to pay only one half of it, and that as the plaintiff had refused to become a party to the indenture, he should make no provision in it for any more of the note than he was himself liable to pay ; and that according to these instructions, the indenture was drawn so as to embrace only one half of the debt. A verdict having been taken for the plaintiff, and judgment rendered thereon by the county court, the cause was removed to this Court, on a case stated by the parties, containing the above facts, by which it was agreed, that if this Court should be of opinion that the plaintiff, on the case stated, was entitled to recover, the judgment of the county court was to be affirmed, othwise to be reversed, and the plaintiff to become nonsuit.

*Royce and Hodges*, *for the defendants.*—1. It is insisted, on the part of the defendants, that *Lapham*, having signed the note at the request of *Barnes* only, without the knowledge or consent of *Hitt*, could not make *Hitt* his debtor, without showing that *Hitt* was a joint principal on the note, and that it was at his request. 8 *Term Rep.* 610.—*id.* 308.—10 *Johns.* 361.—1 *N. Y. Dig.* 78. If it was in the power of the plaintiff to make *Hitt* his debtor for a moiety of the note as co-surety, he could not in a suit against the defendants jointly charge them ; for he having become co-surety with *Hitt*, without his request, must take the le-

RUTLAND,
February,
1828.

Lapham
*vs.*
Barnes et al.

gal consequences of that relation, and can charge *Hitt* with half the debt only. 2 *Bos. & Pul.* 270.

2. This not being a suit on the note given originally for the money to the plaintiff, the exhibition of the note on trial is simply evidence of his having paid the money, but is not even *prima facie* evidence that *Barnes* and *Hitt* were joint principals. This is not the case of a purchase of a note, for the plaintifl is one of the signers. His claim is, therefore, for having paid the money for the defendants at their *request* ; and the case shews that *Hitt* was ignorant of the whole transaction ; and it also shews sufficient to induce the belief that it was paid by the plaintiff with a full knowledge that it was the sole business, and for the sole benefit, of *Barnes.*

3. The indenture does not shew that *Hitt* was a joint principal, and is, therefore, inadmissible ; for the same instrument shews that *Barnes* had conveyed all his property in trust. And no party to said indenture having signed the note, except *Hitt*, and the name of *Lapham* then being on the note, *Hitt* might treat him as a co-surety, and was under no obligation to make provision for him in the indenture. If *Hitt* was a co-surety, in what manner could he have provided for the part he was bound to pay as co-surety, except by using the same language made use of in the indenture ?

4. Parol testimony is admissible to explain the admission made by *Hitt* in the indenture. It is not to contradict or explain a written instrument between the parties, as laid down in ordinary cases. *Lapham* is not a party to this indenture, either in interest or contract. It is, therefore, simply an admission in *writing* of *Hitt* made in a transaction foreign to the knowledge, as well as interest, of *Lapham ;* and an admission which, if binding on *Hitt*, cannot be directly or indirectly enforced by *Lapham.*

*Bennett, for the plaintiff.*—1. If *Barnes* and *Hitt* were *joint principals*, as between themselves, on the *Burr* note, there can be no doubt in the case. If the parol evidence is inadmissible, the balance of evidence is that they were joint principals. Among joint principals, the request of one enures as the request of all.— 5 *Johns.* 176.

2. The payment to *Burr* is a good one. 2 *Esp. Rep.* 571.— 11 *Johns. Rep.* 518.

3. It is contended that it is immaterial as to *Lapham,* whether *Barnes* and *Hitt* were joint principals or not as between themselves. *Barnes* and *Hitt* held themselves out to the world on negotiable paper as joint principals, and hence are bound as such to all who shall contract rights, relying upon this relation, and not ap-

RUTLAND,
*February,*
1828.

Lapham
*vs.*
Barnes et al.

prized of a different relation.    These propositions, it is believed can be well sustained.    The following authorities may illustrate these propositions: 2 *Starkie*, 31.—2 *Esp.* 637.—1 *Camp.* 245. —4 *Camp.* 215.—9 *Mass.* 59.

4. The doctrine for which we contend does no injustice to *Hitt*. But the doctrine for which the defendants contend does injustice to *Lapham*.

5. The case of *Exall* vs. *Partridge et al.* 8 *T. Rep.* 308, sustains this action, and is not opposed by the case of *Elmendorf* vs. *Tappen*, 5 *Johns. Rep.* 176.

PRENTISS, J. delivered the opinion of the Court.—Whether the note, given by the plaintiff to *Mr. Burr*, was payment of the former debt, and created a cause of action in favor of the plaintiff, for so much money paid, laid out and expended, is the first question.    By the common law, though it is otherwise in the civil law, the mere substitution of one simple contract in place of another, does not, while it remains unexecuted, operate as an extinguishmeet of the old debt ; yet it seems that a promissory note, if it be received in satisfaction, will have that effect. *(Barclay* vs. *Gooch*, 2 *Esp. Cas.* 571,—*Duke* vs. *Mitchell*, 3 *East*, 251.*)*    In *Sheeby* vs. *Mandeville*, 6 *Cranch*, 264, *Marshall*, Ch. J. said, that, although, as a general principle, a promissory note of the party, or of a third person, will not, of itself, discharge the original cause of action, yet if the note, by agreement, is received as payment, it satisfies the original contract, and the party receiving it must take his remedy upon it.    The same doctrine was adopted in *Wetherby* vs. *Mann*, 11 *Johns. Rep.* 518, and in *Arnold* vs. *Camp*, 12 *Johns. Rep.* 409.    In the latter case, it was held, that a promissory note of one of two partners, given for a note against the partnership, was a discharge of the partnership note ; and that the giving up of the latter to be cancelled was sufficient evidence that the former was intended and agreed to be received as payment.    But the mere circumstance, that the original cause of action has been extinguished by the party, is not sufficient to entitle him to recover under a count for money paid.    In *Taylor* vs. *Higgins*, 3 *East*, 169, it was held, that the giving of a new bond and warrant of attorney by a surety, although it was received in payment and satisfaction of the old debt, and the old bond and warrant of attorney were cancelled, could not be considered as so much money paid for the defendant's use.    In *Cummings* vs. *Hackley*, 8 *Johns. Rep.* 202, the question was, whether giving a bond in discharge of the liability of the plaintiff, as surety for the defendant, was to be considered as payment of money, so as to

support an action for money paid. It was determined, that, although, as between the parties to the bond, it might be sufficient to discharge the simple contract debt, because it was changing the security to one of a higher nature, yet that a bond had no analogy to cash, and was neither the actual payment of money, nor equivalent to the payment of money. In *Moore* vs. *Pyrke*, 11 *East*, 52, where the plaintiff's goods were distrained and sold for rent due from the defendant, it was held, that the money produced by the sale; and paid over to the landlord in satisfaction of the rent, could not be considered the plaintiff's money ; and, therefore, although the debt was extinguished by the seizure of the plaintiff's goods, it was not paid by him in money, and he could not recover in an action for money paid for the defendant's use. In *Maxwell* vs. *Jameson*, 2 *Barn*. & *Ald*. 51, where the plaintiff, being one of several makers of a promissory note, took up the note, giving his own bond for the amount, the question was, whether an action for money paid could be maintained. *Bailey, J.* said, that the plaintiff had paid no money ; none had as yet come out of his pocket, and *non constat* that any ever would ; for if he recovered from the defendant, still it was possible that he might never pay the money over : when he paid the money due upon the bond, he might then have his remedy. *Abbott, J.* said, that even supposing that the plaintiff had entirely relieved the defendant from the demand against him, still the giving of a new security which extinguished the old debt, was not the same as payment. According to the reasoning in the two cases last cited, it would seem that nothing but the actual advancement of money will be sufficient to support the action for money paid. But it has been determined in several instances, that although the plaintiff has not actually paid money, yet if he has given what is equivalent to it, the action may be maintained. In the case of *Barclay* vs. *Gooch*, it was held, that if a party gives a promissory note for the debt of another, which the creditor accepts in payment, it is a payment of money to the party's use and may be recovered as such. And in *Wetherby* vs. *Mann*, it was determined that the giving of a negotiable note, if received in satisfaction of the debt, is equivalent to the payment of money, and may be considered as the payment of money. These cases are supported on the ground, that a negotiable note is the current representative of money, and may be regarded as money ; and on the whole, we are inclined to think, that as as the plaintiff's note was accepted by *Mr. Burr*, as payment, and the old debt was thereby satisfied, it may be considered the same as if so much money had been paid by the plaintiff, and will support the action for money paid.

RUTLAND,
*February,*
1828.

Lapham
*vs.*
Barnes et al.

RUTLAND,
February,
1828.

Lapham
vs.
Barnes et al.

The next question is, whether the payment made by the plaintiff is to be considered as so much money paid by him for the use of both defendants, and this action, which is a joint action against both, can be maintained.  If both defendants had been principals in the note to *Mr. Burr,* and the debt had been the proper joint debt of both of them, there could be no question but that the action might be maintained, although the plaintiff paid the debt at the request of one of them only ; for in such case the request of one would operate as the request of both, and as the money would be paid for the use of both, the law would imply a promise on the part of both to repay it.   But from what appears in the case, it must be taken, we think, that the debt was the proper debt of *Barnes,* and that *Hitt* was in fact a mere surety ; and considered in this view, if the plaintiff had not been a party to the note, and recognized as such by *Hitt,* but had paid the debt, being a stranger to the note, at the request of *Barnes,* the principal, it would seem, that the payment must be deemed to have been made for the separate use of *Barnes,* and not for the joint use of him and *Hitt.*   In such case, the payment of the plaintiff would have the same effect, as it respects *Hitt,* as if it had been made by *Barnes* himself, whose duty it was to pay the debt, and the plaintiff's remedy would be against *Barnes* alone.   In the case of *Exall* vs. *Partridge et al.* 8 *T. R.* 308, cited by the plaintiff's counsel, the defendants were joint lessees of certain premises, and covenanted to pay the rent.   Two of the defendants had assigned their interest in the premises to the third, and subsequent to the assignment, the plaintiff, with knowledge of that fact, put his goods on the premises, where they were taken as a distress for rent arrear ; and the plaintiff in order to redeem his goods, which had been thus wrongfully taken, was obliged to pay the rent.   It was held, that the plaintiff, under the circumstances of the case, might maintain an action for money paid against the three defendants. It is to be observed that the plaintiff was compelled to pay the rent, under the coercion of a distress made on all the defendants jointly, and in consequence of their neglect to discharge a debt for which they were all jointly liable ; and the case was decided on the special ground, that the payment by the plaintiff was not a voluntary but a compulsory payment, which he was obliged to make in order to redeem his goods.   *Lawrence,* J. admitted, that the justice of the case was, that the party, who was ultimately liable to pay the money, should be answerable to the plaintiff ; and it is very apparent, that if the payment had been made at the request of the party who was ultimately liable, and without any distress of the plaintiff's goods, the decision would have been that the action could

RUTLAND,
February,
1828.

Lapham
vs.
Barnes et al.

not be supported. In *Elmendorf* vs. *Tappan et al.* 5 *Johns. Rep.* 176, three of the defendants were principals, and the fourth a surety, on a bond given to the *United States* for duties, and the plaintiff, at the request of one of the principals, paid the bond, and brought assumpsit for money paid against the principals and surety; and it was held, that the action could not be maintained. *Kent*, Ch. J. said, that although a request by one of the debtors might well enure as the request of all who were concerned in interest, and were ultimately responsible to each other for the payment of a ratable proportion of the debt, yet this ought not to be extended to the surety ; that if the defendant, who made the request to the plaintiff, had himself paid off the bond, he never could have called upon the surety to contribute ; that when the bond was once discharged, the surety had no further concern or interest in the transaction ; and a payment, at the request of one of the obligors, ought not to have a greater operation than an actual payment by that one.

It was insisted in the argument, that the indenture, executed in July, 1824, between the defendants and certain other persons, furnished conclusive evidence that *Hitt* was a principal in the note to *Mr. Burr*, and that the debt was the proper joint debt of him and *Barnes*. The object of the indenture appears to have been the assignment of certain property of *Barnes* to trustees, for the payment of debts for which *Hitt* and certain other persons, parties to the indenture, were liable for him ; and it was very natural and proper to describe the debts, and the amount, for which the parties, for whose benefit the indenture was made, were respectively holden. Accordingly, the indenture describes the note to *Mr. Burr* ; and after stating its amount to be $300, and that it was signed by the defendants and the plaintiff, it adds, " *of which the said Hitt is holden to pay* $150." These words do by no means import that the debt was the proper joint debt of the defendants, or at all preclude the idea of *Hitt's* being a mere surety. The words are not that *he is to pay*, but is *holden* to pay, $150, and may, as we think, well admit of the construction, that he was liable or holden as surety to that amount. The note being also signed by the plaintiff, it was considered that the plaintiff was holden for the other moiety of the debt ; and as *Hitt* would consequently be ultimately liable for $150 only, it was the intention to provide him with security to that amount. This is evident from the indenture itself, as well as from the testimony given in the case.

But the payment by the plaintiff was not a payment, made at the request of *Barnes*, by a mere stranger to the note. The plain-

tiff had previously become a party to the note, and paid the debt in consequence of the obligation he had thus incurred. On the face of the note, he and the defendants were originally joint promissors, and parties in the same engagement; and from the face of the note, the inference would be that each was responsible, as amongst themselves, for a ratable proportion of the debt. But it was competent for the plaintiff, and equally so for *Hitt*, to repel this inference, by shewing, as they have done, the circumstances under which they became parties to the note. Although the plaintiff signed the note, after its execution and delivery by *Barnes* and *Hitt*, yet by thus making himself a party to the note, and becoming a joint promissor with them, at the request of *Barnes*, he may be considered as intending to bind himself as a surety upon the note, for *Barnes*, originally with *Hitt*. This view of the case, as against *Hitt*, is the most favorable that can be taken for the plaintiff; and his right to claim to stand in that relation appears to be supported by the indenture. That, as well as other evidence in the case, shews, that *Hitt* recognized the plaintiff, not, however, as a guarantor of the note, but as a co-surety with him for *Barnes*, and that he considered himself and the plaintiff as sureties, jointly responsible for the debt. Viewed in this light, they stood in *equali jure*, and the plaintiff would be entitled to a remedy against *Hitt*, to recover his aliquot proportion of the money advanced in payment of the debt. But, then, the plaintiff, if he would seek a contribution from *Hitt*, must sue him alone, and cannot maintain a joint action against him and the principal. This action, therefore, cannot be supported; and, according to the agreement of the parties, the judgment of the county court must be reversed and a nonsuit entered.

Judgment accordingly.

*Royce* and *Hodges*, for defendant.
*Bennett*, for plaintiff.