Cheney et al. vs, Cook.

RUFUS CHENEY, JR. and GEORGE G. WILLIAMS
Respondents,

*vs.*

HOMER COOK, Appellant.

APPEAL FROM JEFFERSON CIRCUIT COURT.

An agreement in writing whereby A. agrees that he will sell to B. & C. from 80 to 400 acres of land on the west and east side of Rock River, five miles north of the village of Jefferson, in Jefferson county, for twenty dollars per acre, and would receive in payment for the same, full paid stock in the Wisconsin Central Railroad Company, at par, and give the said B. & C. thirty days to determine how much, if any, and what part of said land they would take as above specified for value received, the said B. & C. to pay one thousand dollars in stock down, and to have one year to pay the balance without interest, and in case they should not take the whole lands, that what they should select should be an average of said lands : is a binding contract upon the parties, in case B. & C. within the time elect to accept the terms thereof, and give notice thereof, and tender performance on their part.

Such a proposition is a continuing offer, and unless revoked before it is accepted by the other party, becomes a contract on such acceptance.

The words "for value received," in a contract for the sale of lands, is a sufficient expression of the consideration to take the case out of the statute of frauds.

The complaint is not bad, for the reason that it avers the agreement for the sale of lands was "executed" by the party making the same, instead of averring that it was "subscribed" by him.

An agreement or contract for the sale of lands, though signed by one party only may be enforced against the party signing the same, if in other respects good, notwithstanding the objection arising from the want of mutuality of remedies.

Upon demurrer to a complaint for specific performance of a contract for the sale of real estate, the court will not consider the change of circumstances of value and the like, which would render performance inequitable, but will wait for the coming in of the answer and proofs.

The complaint filed by the respondents states that on or about the 5th day of February 1856, the above named defend-

ant made and executed a written agreement, bearing date on that day, and delivered it to the plaintiffs, which agreement was in substance and effect as follows, that he, the defendant, would sell to Cheney and Williams from 80 to 400 acres of land on the west and east side of Rock river, five miles north of the village of Jefferson, in Jefferson County, for twenty dollars per acre, and would receive in payment for the same, full paid stock in the Wisconsin Central Railroad Company at par, and give the plaintiffs thirty days to determine how much, if any, and what part of the land they would take as above specified for value received. The plaintiffs to pay one thousand dollars in stock down, and having one year to pay the balance in stock, without interest; and it was understood (as expressed in said agreement) that in case the plaintiffs, should not take the whole of said land, that what they should select, should be an average of said lands.

And the plaintiffs offer to produce the said agreement when required:—

That at the time when the said agreement was made, the defendant owned, by a good or an inchoate title, a body or tract of land about five miles north of the village of Jefferson, in Jefferson county, lying in part on the east side and in part on the west side of Rock river, containing about four hundred, to four hundred and eighteen acres, and which was the land referred to and intended in and by the said agreement; and within a few days after the making of said agreement, the defendant showed and pointed out to Rufus Cheney Jr., one of the plaintiffs, the said tract of land as the land intended in and by said agreement; and thereupon, and within less that thirty days after the making of said agreement, and as near as either of the plaintiffs is able to state, about eleven days after that time, the plaintiffs notified the said defendant that they determined to take the whole quantity of land mentioned in the agreement, being hour hundred acres; but the

plaintiffs not knowing definitely whether the said tract of land exceeded four hundred acres, and the defendant representing that there was just about four hundred acres of it (or a trifle more) the plaintiffs did not define any particular part or boundaries, leaving the defendant to convey to them, and they being willing to receive the conveyance of any four hundred acres thereof, if the land should exceed that quantity, or the whole quantity at the rate aforesaid per acre, if the defendant wished them to take it, and being still willing and hereby offering so to do.

That at the time of the plaintiffs notifying the defendant that they determined to take the whole quantity of land mentioned in said agreement, they offered to the defendant one thousand dollars of full paid stock in the Wisconsin Central Railroad Company, being in shares of said stock of one hundred dollars each, duly assigned to the defendant, but which he refused or declined to accept.

That a short time before the 5th day of February, 1857, viz. on the 2d day of said February, the plaintiffs offered to the defendant eight thousand dollars of the full paid stock of the Wisconsin Central Railroad Company, being eighty shares of said stock of one hundred dollars each, duly assigned to the defendant, which included the said one thousand dollars of stock first offered to him, and at the same time demanded of him, in writing, that he execute to the plaintiffs a conveyance of the four hundred acres of land, specified in said agreement, by the 5th day of February, 1857; and on the said 5th day of February, 1857, the plaintiffs, by their agent, demanded of the defendant the said conveyance, and offered to deliver to him the said stock, but he refused to deliver such conveyance, and has ever since neglected and refused to deliver it, or to convey to the plaintiffs any of said land, or otherwise satisfy the plaintiff's claim under said agreement.

That the said defendant at the time of the plaintiff's de-

manding said conveyance had, and he still has a good and marketable title to all of the said land, and could convey it to the plaintiffs if he was disposed to do so. That the plaintiffs still have the said eight thousand dollars of stock ready to deliver to the defendant, and offer to do so; and offer to receive the conveyance of any four hundred acres of said land, or the whole of it, whether more or less than that quantity, at the rate aforesaid per acre, or for the said eight thousand dollars of stock. The plaintiffs demand judgment, that the defendant specifically perform his said contract, by conveying, &c.

To this complaint the defendant demurred, assigning the following causes: for that it appears on the face thereof, that the same does not state facts sufficient to constitute a cause of action, and specifies as grounds of objection to said complaint—

1. That it does not show any agreement, but an offer by one party not accepted by the other.

2. It does not show any consideration for any agreement or contract.

3. It does not show that any specific land was offered, or selected, or bargained, or sold, or agreed to be conveyed.

4. It sets forth only an agreement, void for want of consideration.

5. It sets forth only an agreement, void for uncertainty.

6. It sets forth only an agreement, void for want of mutuality.

7th. It shows that plaintiffs have not performed the agreement as claimed by them, as they did not tender railroad stock enough to pay for the whole four hundred and eighteen acres selected by them, and they never selected any particular part of said four hundred and eighteen acres; and, therefore, plaintiffs cannot enforce a contract which they have not performed on their part.

8. That said agreement was never executed by the plaintiffs, and therefore not binding upon either party.

9. That defendant could have had no cause of action against plaintiffs at any time for their failure to perform any act under this contract, and has received nothing under the contract, and therefore is not bound.

10. The agreement set forth cannot be specifically performed, because no part of said land has been selected, and no damage is shown or set forth in said complaint.

11. It does not appear but that the railroad stock is of much more value than the land, so that no damage could be awarded plaintiffs.

12. It does not appear that enough stock was ever tendered or that the tender of any stock has been kept good.

13. It does not state that defendant owns the land, and can make a good title to the same.

14. Said complaint is otherwise defective, informal, uncertain and insufficient.

*E. G. Ryan and D. F. Weymouth,* for the Appellant.

1. The complaint is for specific performance of an alleged contract, and is subject to the principles applicable to the old bill for specific performancce.

This peculiar relief of courts of equity, does not rest upon the right of the party, but upon the discretion of the court; and will never be granted upon an unconscionable contract, or where the specific performance would not do entire equity between the parties. *City of London vs. Nash.,* 1 Vesey, 13 ; 4 Atk. 512 ; *Joynes vs. Stratham,* 3 Atkins, 389 ; *St. John vs. Benedict,* 6 John. Ch., 111 ; *Seymour vs. Delancy,* 6 John. Ch., 222.

It is submitted that the agreement set out in the complaint is unconscionable upon its face. It binds one party only. It gives option to one party only, how far the contract shall go.

It gives the whole advantage to one party, of the effect of time upon the value of the subject of the exchange.

It is submitted that the want of matuality alone is sufficient objection, whether or not the contract be void at law on that ground. If the court could not decree specific performance to one party, it ought not to decree it to another. Remedies cease to be equitable when they cease to be mutual.

It is submitted that the respondents having seen fit to abide by the refusal of the appellant to perform from about the 16th of February, 1856, to the 24th day of March, 1857, are not entitled to this relief. Had it been a sale of land for money, the respondents would not have been equitably entitled to wait that time, abiding by the terms of the contract if the land advanced in value, abiding by the appellant's refusal if the land depreciated in value. But in this case it was an exchange of land for railroad stock; and the respondents had a double advantage in so waiting to make their election, taking advantage of the change in value of both the objects of exchange. The history of the country makes it notorious that in the meantime land in this State advanced in value and railroad stock depreciated in value. And a court of equity will not give the respondents the unfair advantage of waiting until the appellant's land had advanced, and their railroad stock had become worthless. See on this subject, *Bashier vs. Gratz*, 2 Wheaton, 528 ; *Rogers vs. Saunders*, 16 Maine, 92 ; *Cooper vs. Brown*, 2 McLean, 495.

And it is submitted that the court should, in this connection, apply the rule that it will not enforce specific performance upon terms of gross inequality, but will leave the respondents to their remedy at law, if any they have.

2. The contract is void under the statute of frauds, for not "expressing the consideration." Rev. Stat., 388, chap. 76, § 8. There is no seal to import a consideration. No consideration is expressed. The words "for value received," are

insufficient to satisfy the statute. These words do not purport to express *the* consideration, but only *a* consideration. This court in *Day vs. Elmore*, 4 Wis., 196, reluctantly, and apparently against their own judgment, held these words sufficient to satisfy the statute in a guaranty of commercial paper. This decision should not be extended further. In commercial paper, the words " value received" have acquired an immemorial authority. But in contracts other than commercial they have no such weight from usage.

But in this case, we are relieved from difficulty. The words " for value received" are not used to signify the consideration of the appellant's contract, and do not purport to signify it. These words are used in connection with the respondent's election how much land they would take as above specified for " value received." The " value received" relates to the stock *to be paid* for the land on the final execution of the terms of the contract and not to any consideration *already paid* for the executory contract itself.

Here, then, is a contract void at law, not confessed with a waiver of the statute by the appellant, and not part performed. Equity will not enforce such a contract. See 2 Story's Eq., § 757, and cases cited.

3. The contract states that the appellant " executed" the contract. That is insufficient to satisfy the statute. He must be averred to have " subscribed " it. A contract may be executed without the signature at the foot of it of the party. *Davis vs. Shields*, 26 Wend., 341.

4. The contract is void for uncertainty of the object of it. The description is " from 80 to 400 acres of land on the west and east side of Rock river, five miles north of the village of Jefferson, in Jefferson county." It is not averred that the appellant had a body of land corresponding with this description. The averment is that he had " *about* four hundred *to* four hundred and eighteen acres, *about* five miles north of,

&c., lying *in part* on the east side and *in part* on the west side of Rock river."

The first difficulty in the description is a patent ambiguity. The land is described as all lying on both sides of Rock river. The difficulty being patent on the writing cannot be explained by parol. Parol evidence is inadmissible to prove that the land lay part on one side and part on the other. And the averment of the complaint is a departure from the contract set out.

There is still another patent ambiguity. The whole body of the land is described as lying five miles, neither more or less, north of Jefferson. This difficulty being patent on the writing cannot be explained by parol. Parol evidence is not admissable to show whether the middle, or the south line, or north line lay at the designated distance. The land cannot be identified without explaining the patent ambiguity by parol.

But there is still greater difficulty. No land is so described that anything would pass in a conveyance by the description used. A contract to convey must, like a conveyance, contain "the certainty of the thing granted."

*J. E. Holmes*, for the Respondents.

We think the circuit court properly overruled the demurrer for the following reasons:

1. It is a familiar principle, that, as to consideration, an injury to the party to whom the promise is made, or benefit to the party promising is sufficient. Chitty on contracts, 8th American form, 4th London edition, page 29, note; and nuthorities there cited. This agreement was in writing; was loss to the parties to whom made, and benefit to the party making it; and was for value received.

2. An offer to a party, giving time to accept, is good. 1 Parson on Contracts, 404.

3. It is not necessary that the agreement should specifically describe the land. 21 Wend., 651. It is sufficient if the land intended can be definitely ascertained, which is done in this case, as admitted by the demurrer.

4. It is no objection to the contract that the exact quantity was unknown. Story's Equity Jurisprudence, § 777, and numerous cases cited. Any excess or deficiency in this respect courts of equity will provide for, when complete compensation can be made. 2 Leading Cases in Equity, part 1, pp. 549 and 550; id., 2, 36; 2 Barbour's Sup. Ct. Rep., 37; *King vs. Hamilton,* 4 Peters, 311.

5. Want of mutuality is where the plaintiff's part of the agreement cannot be enforced or secured. Willard's Equity Jurisprudence, 267-8; Adams' Equity, 82.

A decree in this case is only asked upon full performance by plaintiffs.

6. Plaintiffs have done all on their part necessary towards performance to entitle them to demand specific performance from the defendant. Story's Equity Jurisprudence, §§ 771, 775, 776; *Boston & Maine R. R. vs. Babcock,* 3 Cushing's Rep., 228.

*By the Court,* COLE J. We do not deem it necessary at the present time to discuss in detail all the objections urged against the complainant in this case, and shall content ourselves with examining one or two of the grounds of demurrer which embrace the most serious questions arising at this stage of the cause. Some of the objections taken to a specific performance of the contract may be more properly considered when the answer and proofs are before us.

This action is brought to compel the specific performance of a contract set forth in the complaint for the sale and conveyance of real estate. The complaint alleges that the appel-

lant·on or about the 5th day of February, 1856, made and executed a written agreement bearing date upon that day, and delivered the same to the respondents, by which agreement the appellant agreed to sell the respondents from eighty to four hundred acres of land on the west and east side of Rock river, five miles north of the village of Jefferson, in Jefferson county, for twenty dollars per acre, and to receive in payment for the same, full paid stock in the Wisconsin Central Railroad Company, at par, and gave the respondents thirty days to determine how much, if any, and what part of the land they would take upon the terms specified, for value received. The respondents were to pay one thousand dollars in stock down, and the remainder in one year without interest. It appears the agreement provided that in case the respondents should not take the whole of the lands, that they should select what would be an average. The complaint alleges that the respondents within the thirty days notified the appellant that they had determined to take the whole quantity of land mentioned in the agreement, being about four hundred acres.

Although the agreement as set forth in the complaint is not very artistically drawn, yet we think there can be no difficulty in arriving at the intention of the party who made it. As we understand the purport and object of the agreement, it contained a written proposition made by the appellant for value received to sell such a quantity of land as the respondents might elect to take, from eighty to four hundred acres, the land lying partly on the east and partly on the west side of Rock river, and being about five miles north of the village of Jefferson, in Jefferson county, for a certain price per acre, if the proposition should be accepted by the respondents in thirty days. The proposition was a continuing offer made by the proposer for the time limited, and which probably he might have revoked at any time before it was accepted by the opposite party, but which when accepted as proposed, became

a contract. *Boston & Maine R. R. vs. Babcock*, 3 Cushing R., 224; 1 Parson's on Cont. 403, and cases cited in the notes.

Now it is objected that this proposition or contract is void for not expressing the consideration, and therefore is not binding upon the appellant. And we are referred to § 8, Ch. 75, R. S., which declares that " every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." According to the agreement set forth in the complaint, the appellant for value received " agreed to sell the land on the terms proposed in his offer, and we suppose these words, by the doctrine of numerous adjudged cases, must be held a sufficient expression of the consideration to meet the requirements of the statute. *Day vs. Elmore*, 4 Wis. R., 190. We have already stated that we understand the words " for value received " as used to express the consideration of the appellant's contract. We do not think they can fairly and reasonably be said to relate to any other matter. Neither do we feel authorized to say that the complaint is bad because it alleges that the agreement was " executed " instead of averring that it was " subscribed " by the appellant. The code requires that in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties; (§ 65,) and we should not be conforming to the spirit of this provision if we should hold that the complaint in this instance was bad for using the word " execute " instead of the word " subscribe."

Again it is insisted that the court ought not to enforce the performance of this contract, because it is not signed by both parties. But we suppose it to be well settled under the authorities that a contract signed by only one party as against

the party who signs it, will be enforced in equity as well as at law, notwithstanding the objection arising from the want of mutuality of remedy between the parties. *Gleason vs. Bailey*, 14 J. R., 484; *McCrea vs. Purmort*, 16 Wend., 460; *Woodward vs. Aspinwall*, 3 Sandf., R., 272. It is furthermore argued that the agreement described in the bill is unconscionable upon the face of it, and that to enforce a specific performance of it after the great depreciation which has taken place in railroad sureties, within the last year or two, would be most unjust and oppressive, more especially as the respondents took no steps to enforce the contract for a year or more after their rights, if any they had, became complete under it. " There can be no doubt that mere delay to enforce a contract, apart from any default, may constitute a bar to a specific performance in equity, when it has resulted in a change of the attendant circumstances of such a nature as to render it unequitable to enforce it." White & Tudor's Equity Cases, Vol. 2, part 2, notes to case of *Seton vs. Shade*, *Pratt vs. Carroll*, 8 Cranch 471; *Anthony vs. Leftwich*, 3 Rand. 238. Whether this is true in the present case can only be determined when the pleadings and proofs are all in, and it would be premature for us to express any opinion upon this point now.

The conclusion to which we have arrived is that the order of the circuit court overruling the demurrer to the complaint filed, is correct and must be affirmed.