CHARLES C. ELLIS'S ADMR. v. DANIEL DURKEE.

October Term, 1906.

Present: TYLER, MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed November 26, 1906.

*Contracts—Consideration — Variance — V. S. 1630 — Offer Without Consideration—Effect—Offer Without Time Limitation—Effect—Reasonable Time—Question of Fact —Evidence—Damages—Lack of Special Allegation— Judgment—Manifest Error in Computation.*

An offer, in order to be effectual as such, need not be supported by a consideration; such consideration would only affect the right of revocation.

An offer without a consideration may be revoked at any time, but, if seasonably accepted before it is revoked, it results in a binding contract.

Where an offer is not limited as to time, it remains open for a reasonable time, unless sooner accepted or revoked.

In assumpsit by an administrator, it appeared that on December 15, 1900, defendant voluntarily wrote plaintiff's intestate advising him to refrain from selling certain corporate stock that he was desirous to sell, and adding: "Now at any time after six months, if you still think you want to quit, I will cash you up myself, and pay you six per cent., if you can't do better." Thereafter the intestate continued to hold his stock, but it did not appear that he did so in reliance on said proposition, and on August 23, 1901, the offer not having been withdrawn, he wrote defendant that he would accept his offer and turn the stock over to him at six per cent., and thereupon defendant denied having made the offer and refused to take the stock. *Held*, that defendant's proposition was a continuing offer, without a consideration, and, therefore, open for six months and for a reasonable time thereafter, and that the acceptance thereof by the intestate within such reasonable time resulted in a contract binding defendant to fulfil his offer.

Defendant was not entitled to a formal tender of the stock, for he denied the offer and absolutely refused to take the stock.

The real consideration for defendant's agreement to take the stock was the intestate's agreement to turn it over to him on the terms named, and not his forbearance to sell in reliance upon defendant's proposition.

Although the declaration alleges that the consideration for defendant's agreement was the intestate's forbearance to sell the stock, yet, as enough appears in the declaration to show what the real consideration was, the objection that there was a variance between the proof and the declaration is technical merely.

Since the variance complained of does not "affect the right of the matter," and the exceptions do not show that any claim of variance 'was made or passed upon in the trial court, that question, because of V. S. 1630, cannot be considered by this Court.

The question of reasonable time is, ordinarily, one of fact, and as there is nothing in this case to take it out of the general rule, the finding of the trial court that the acceptance of the offer was within a reasonable time is conclusive.

Defendant's letter to the intestate, dated August 12, 1901, giving a favorable account of the business of the corporation that issued the stock in question, was properly received in evidence as bearing on the question of reasonable time, since it tended to explain the intestate's delay in accepting the offer.

Because the declaration contains no allegation of special damage, if for no other reason, it was error to allow plaintiff's judgment to include the amount of an assessment on the stock paid by the intestate; and there was also a manifest error in computation. But, as the record gives the figures necessary to correct these errors, judgment is reversed, and judgment entered for plaintiff for the correct amount.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue. Trial by court at the June Term, 1906, Windsor County, *Rowell, J.,* presiding. Judgment for the plaintiff. The defendant excepted.

Among the findings of the court is the following: "The defendant never withdrew his offer, but left it open; and if it is a question of fact, we find that in the circumstances the intestate accepted the offer within a reasonable time, and that

he was influenced to some extent to delay acceptance by reason
of defendant's letter of June 19th."

The body of the letter of Aug. 12, 1901, mentioned in
the opinion is as follows: "Your last came duly on time. I
waited a short time, thinking would finish well started when
you was here. It is now 1300 feet, and I want to put it, if
possible, 1400. It shows good, but the deeper we go the
lighter the oil. The well on the hill, finished at 1200 feet, is
good for 100 bbls. daily, and possibly more. Not pumping it
now. Nearly ¾ wells here are shut down. Oil is without
price at present time, and stocks are all low in sympathy. If
the Combination materializes, prices will go up very soon.
H—— Bartlett can give you conditions if you will write to
them. It is a black eye at present but surely has a future."

*Tarbell & Whitham* and *Davis & Davis* for the defend-
ant.

When the facts are found, the question of what is a rea-
sonable time is one of law. *Loring* v. *Boston,* 5 Met. 409;
2 Parsons Cont., 651-775; *Holbrook* v. *Burt,* 22 Pick. 546.

*John J. Wilson* and *W. B. C. Stickney* for the plaintiff.

Forbearance to sell the stock constituted a good consid-
eration. *Ballard* v. *Burton,* 64 Vt. 387-393; *Stevens* v. *Gibson,*
69 Vt. 143; *Cit. Sav. Bank* v. *Babbitt Est.,* 71 Vt. 182; *In
Re Stevens & Adams, Locklin, Receiver,* 74 Vt. 408; *Hakes*
v. *Hotchkiss,* 23 Vt. 231.

POWERS, J. The intestate and defendant were stock-
holders and directors of the Minnehaha Oil Company, of Cali-
fornia. The former lived in Massachusetts, and the latter,
who was superintendent of the company, in California. In

December, 1900, the intestate was anxious to sell his stock, and so wrote the defendant, who replied on the 15th of that month expressing his surprise that the intestate should desire to sell, insisting that it would not be to his advantage to do so, and adding, among other things not here material: "Now at any time after six months, if you still think you want to quit, I will cash you up myself, and pay you six per cent., if you can't do better." This proposition was never withdrawn, but allowed to stand open until accepted as hereinafter stated. The trial court declined to find that the intestate relied upon this proposition, but did find that after this letter was received the stock advanced in price and the intestate came to think so well of it as an investment that he did not care to sell at all,— at least not at the price he could then get, as he expected it to go higher. Later on, the price of oil went down, oil stocks went down in consequence, and this particular stock became unsalable and worthless. On June 13, 1901, the intestate again desired to sell his stock, and on that day wrote the defendant to that effect. The defendant replied on the 19th, urging him to be patient, insisting that it was no time to sell, giving encouraging reports as to the affairs of the company, and assuring him that he had no cause for alarm. On August 12, 1901, the defendant wrote the intestate, another letter of similar import. On the 23rd of that month, the intestate wrote the defendant that he would accept his offer and turn over his stock to him at six per cent. To this letter the defendant replied on the 29th denying that he ever made such an offer and declining to take the stock. The defendant never has taken it, and it is now held by the intestate's estate. The suit is brought upon the offer and acceptance contained in the correspondence to recover the amount paid by the intestate for the stock with interest at six per cent., together with the

amount of two assessments paid on the stock,—one in August, 1901, and the other in June, 1902. The plaintiff had judgment in the court below for the sum paid for the stock and the amount of the last assessment, with interest on both sums. The defendant objected and excepted to the admission in evidence of the defendant's letter of December 15, 1900, on the grounds that it did not tend to support the declaration, and that the promise therein was without legal consideration.

The letter did not tend to sustain all the allegations of the declaration, but this is not necessary. It did tend to sustain some of the material allegations, and this is all that is required to make it admissible.

We agree with counsel for the defendant that, in view of the failure to find that the intestate forebore to sell the stock in reliance upon the defendant's proposition, the offer of December 15 was a mere proposition unsupported by a consideration. But it was an offer just the same, and an offer need not be supported by a consideration in order to serve its purpose as such. The only importance of inquiring whether or not an offer is supported by a consideration is to determine whether it can be withdrawn by the party making it before it is accepted by the party to whom it is made. If it is based upon a consideration, the power of revocation is not attached to it. But though it be without consideration, it may be accepted so as to make a binding contract if not sooner revoked; but it may be revoked at any time before it is accepted,—and this is so though it states a certain time during which it is to remain open. *B. & M. R. R.* v. *Bartlett*, 3 Cush. 224. It is the acceptance of such an offer, within the time and according to the terms specified, which completes the binding contract. *Cheney* v. *Cook*, 7 Wis. 413; *Wilcox* v. *Cline*, 70 Mich. 517. If no time is limited in the offer, it remains open a reasonable

time unless sooner withdrawn. *Stone* v. *Harmon,* 31 Minn. 512; *Lamson* v. *Jordan,* 56 Ill. 204.

The character of this proposition was such that it was a continuing offer,—good, if not withdrawn, for six months and for a reasonable time thereafter. *Dawley* v. *Potter,* 19 R. I. 372, is, in principle, much like this case. The defendant there sold the plaintiff the mare Empress in foal by Aristocrat, and at the same time gave him a writing as follows:

Providence, R. I., July 12, 1892.

John A. Dawley, Esq.,

Dear Sir: I will agree to give you two hundred and fifty dollars ($250.) for a foal of 1893 by Aristocrat, out of Empress, provided such colt is a filly, all right and sound at five months old, well marked, with no white on front feet, should you wish to sell her.

Very truly,<br>Earl H. Potter.

A filly which answered this description was born May 12, 1903. It was held that the plaintiff had a reasonable time after the foal became five months old within which to signify his acceptance of the defendant's proposition. In that case, to be sure, the offer was based upon a valid consideration, but as we have seen, that was important only on the question of the maker's right to revoke.

In *Park* v. *Whitney,* 148 Mass. 278, there was no consideration. The defendant wrote the plaintiff under date of May 16, 1884, as follows: "As your possible losses on the water meter business are a source of anxiety to you, I will give you my guaranty to take the meter stock from you at cost, without interest, at any time after Jan. 1, 1886, if at that time you desire to have me do so." The plaintiff accepted

July 9, 1886. It was held that the words "at any time" meant then or within a reasonable time thereafter, but that the acceptance, not being until six months after the time specified in the offer, was too late.

In this State, the question of reasonable time is ordinarily one of fact,—*Insurance Co.* v. *Haynes*, 71 Vt. 306, 45 Atl. 221; *Brainerd* v. *Van Dyke*, 71 Vt. 359, 45 Atl. 758; *Reynolds* v. *Reynolds*, 74 Vt. 463, 52 Atl. 1036,—and there is nothing shown by this record to take the case out of the general rule; so the finding on that point is conclusive.

The defendant's letter of August 12, 1901, was admitted in evidence subject to the defendant's exception on the ground of immateriality, only. The letter was clearly admissible on the question of reasonable time, since it tended to explain the delay in the intestate's acceptance of the offer.

The exceptions to the notice of and the receipt for the assessment of June, 1902, become immaterial in view of our disposition of the case, and do not require consideration.

It is urged that the only consideration for the defendant's undertaking set up in the declaration is the intestate's forbearance to sell in reliance upon the defendant's proposition,— and that this has failed in the proof. It is true that the consideration is so set up; but the real consideration for the defendant's agreement to take the stock was the intestate's agreement to turn it over on the terms named; and enough appears in the declaration to show this. This objection, then, that in this and other respects the proof varies from the allegations of the declaration is technical merely, and in no wise concerns the merits of the controversy. The exceptions do not show that any claim of variance was made or passed upon in the court below, where amendment would doubtless have been allowed, if necessary, so the question cannot be considered

here, since it does not "affect the right of the matter."   V. S.
1630.   The defendant was not entitled to a formal tender of
the stock, for he denied the offer, and his refusal to take the
stock was absolute.   *Amsden* v. *Atwood,* 68 Vt. 322, 35 Atl.
311.

It was error, however, to allow a recovery for the assess-
ment on the stock; because, if for no other reason, the dec-
laration contains no allegation of special damage,—which
would be necessary to such recovery.

A slight error, too, was made in the computation in the
court below.   The amount paid for the stock with interest
thereon to June 26, 1906, is found to be $3350.66; the amount
of the second assessment with interest computed to the same
time is found to be $185.32.   The judgment was for $3543.88,
which is manifestly $7.90 more than the two items amount to.

These errors require a reversal of the judgment, but they
in no way affect the plaintiff's right to recover the proper item
of damages.   They can readily be carved out of the sum
allowed below, leaving the correct amount to stand.   *Milti-
more* v. *Bottom,* 66 Vt. 168, 28 Atl. 872.

*Judgment reversed, and judgment rendered for the plain-
tiff to recover $3350.66 with interest thereon from June 26,
1906, with costs below.*