MANATEE LOAN & MORTGAGE CO. *v.* JOHN B. MANLEY'S ESTATE.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed October 2, 1934.

*Frank E. Barber* and *Ernest W. Gibson, Jr.*, for the defendant.

*Herbert G. Barber* and *Dewey A. Dye* (Bradenton, Florida) of counsel, for the plaintiff.

SLACK, J. The declaration contains the common counts in assumpsit and a special count predicated upon an alleged liability of deceased resulting from his connection with a real estate deal in Florida. Plea, general denial. Trial by jury. At the close of plaintiff's evidence each party moved for a directed verdict. Defendant's motion was denied and plaintiff's motion was granted, all subject to defendant's exceptions.

There is no material conflict in the evidence. It tends to show the following: In January, 1926, the deceased entered into an agreement with W. W. Hodgman to buy certain land in Florida for speculation and share equally in the transaction. Hodgman was then in Florida and negotiated the deal. The property was conveyed to him personally by J. W. Edmondson, Mary A. Edmondson, E. T. Barnes, and Evie Rice Barnes by warranty deed dated January 22, 1926. The price to be paid for it was $11,500. Hodgman on the same day paid $2,965 in cash, assumed an outstanding mortgage payable in one and two years from October 12, 1925, and gave a note for the balance, $2,666.67, payable to the order of J. W. Edmondson, E. T.

Barnes, and W. A. Knight, on or before three years after date, and also gave a mortgage on the property to secure the payment of such note. These instruments he signed "W. W. Hodgman, Trustee," but there was nothing in either of them to indicate for whom he was trustee, and the other parties thereto had no knowledge for whom he was acting, as far as appears. The cash that Hodgman paid was furnished by himself, Manley, said Knight and R. M. Arnau. Hodgman furnished $710, Manley $1,420, and the others $417.50 each. Knight and Arnau were real estate agents who lived in Florida and had to do with the sale of the property to Hodgman. So far as appears, Manley did not know that they were connected with the transaction until he received a letter from Hodgman dated March 1, 1926. With this letter Hodgman enclosed an itemized statement of the transaction which showed, among other things, the price of the property, the cash paid, the amount of the mortgage assumed, and the amount of the mortgage he gave. It also showed how much each furnished of the amount which he paid on the purchase price. Hodgman also enclosed with this letter four copies of a written agreement called a "Declaration of Trust" which had been executed by himself, Knight, and Arnau, and requested Manley to execute them, retain one for himself, and return the others to Hodgman. This Manley did.

The declaration of trust agreement is between Hodgman, as trustee, party of the first part, and Manley, Knight, and Arnau parties of the second part. It sets up that the trustee is vested with the title to certain land in Florida, describing it (which is the land above mentioned); that such land was in fact purchased by the trustee in behalf of himself and the other three, and that the purchase price was furnished one-fourth by Hodgman, one-half by Manley, anl one-eighth each by Knight and Arnau; that in consideration of the premises the trustee agrees that as and from the date of the deed by which he acquired such property he holds it as to an undivided three-fourths part thereof upon trust for Manley, Knight, and Arnau, in the shares stated, and the remaining one-fourth to his own use and benefit. Each party covenants with the other that he will pay his proportionate share of all expenses incurred and which may thereafter be incurred by the trustee in relation to the premises. It further provides that the trustee shall have power to sell or mortgage said land or any part thereof at such time or times

and for such price or prices and upon such terms as he shall see fit, and execute and deliver such instruments as shall be proper and necessary.

On April 13, 1926, Manley sent Arnau a check to pay Manley's share of the interest that was then due on the assumed mortgage, and wrote him, ''I enclose herewith my check for $106.67 to cover my half of the interest on the mortgage on property owned by Hodgman, Knight, Arnau, and Manley.'' When the first payment under that mortgage came due, November 12, 1926, Knight and Arnau were unable to take care of their share, and Manley and Hodgman arranged to do it for them. Manley died November 30, 1927. On January 18, 1928, Edmondson, Barnes, and Knight sold and transferred the note and mortgage Hodgman gave them to the plaintiff for $2,500. It is the indebtedness evidenced by this note that plaintiff is seeking to collect. It did not appear that Manley ever knew from whom Hodgman acquired the property or to whom he gave the mortgage. Neither did it appear that he knew that Knight was a party to the note and mortgage, or that he knew that a note was given except what might be inferred from his knowledge of the mortgage.

█ That the foregoing evidence established a joint adventure between Manley, Hodgman, Knight, and Arnau in the transaction out of which the indebtedness in issue arose is not open to opposing inferences. *Hammel* v. *Feigh,* 143 Minn. 115, 173 N. W. 570; *Johnson* v. *Farmers' & Merchants' Bank,* 152 Minn. 442, 189 N. W. 583; *Dicus* v. *Scherer,* 277 Ill. 168, 115 N. E. 161; *Barton* v. *Wamsley,* 194 Iowa, 591, 190 N. W. 18; *Turtur* v. *Isserman,* 2 N. J. Misc. 1084, 128 Atl. 151; *Drew* v. *Hobbs,* 104 Fla. 427, 140 So. 211, 141 So. 596; *Elliott* v. *Murphy Timber Co.,* 117 Ore. 387, 244 Pac. 91, 48 A. L. R. 1043; *Burget* v. *Cranston* (C. C. A.), 297 Fed. 32; *Berg* v. *Gillender,* 115 App. Div. 288, 100 N. Y. S. 792; *Keisweter* v. *Rubenstein,* 235 Mich. 36, 209 N. W. 154, 48 A. L. R. 1049 and note. See, also, 15 R. C. L., page 500, and 33 C. J., page 845.

Manley's attitude toward the transaction after he knew of Knight and Arnau's connection with it was an adoption and ratification by him of the agreement set forth in the declaration of trust.

██ While a joint adventure differs in some respects from a partnership, the law of principal and agent applicable to the

members of the latter (see 20 R. C. L. 882, and cases cited) is in most jurisdictions held applicable to the members of the former as to transactions within the scope of the enterprise, and especially as to dealings with third parties. In 33 C. J., at page 871, the rule is stated thus: "As to third persons who deal with a joint adventurer in good faith and without knowledge of any limitation upon his authority, the law presumes him to have been given power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged, and they become liable upon such contracts, notwithstanding they may have expressly agreed among themselves that they should not be liable. But he cannot bind his associates by contracts made outside of the scope of the business in which they are engaged, or by contracts made for his individual benefit." And in 15 R. C. L., at page 505, it is said: "As a general rule, each one of several joint adventurers has power to bind the others in matters which are strictly within the scope of the joint enterprise." *Mission Ridge Land Co.* v. *Nixon* (Tenn. Ch. App.), 48 S. W. 405; *Bond* v. *O'Donnell,* 205 Iowa, 902, 218 N. W. 898, 63 A. L. R. 901, and cases collected in note.

██ We think this indebtedness was contracted strictly within the scope of the joint enterprise; at any rate, the undisputed evidence shows that Manley, after he knew all about it, ratified it. *Martin* v. *Rutledge,* 94 Vt. 258, 110 Atl. 222.

Whether he knew about the note is immaterial, since he knew the mortgage was given to secure a specified amount of the purchase price. In the circumstances he was liable for the indebtedness as an undisclosed principal. *John T. Griffith & Co.* v. *Buffum,* 22 Vt. 181, 54 A. D. 64; *Reynolds* v. *Cleveland,* 4 Cow. (N. Y.) 282, 15 A. D. 369; *Kayton* v. *Barnett,* 116 N. Y. 625, 23 N. E. 24; *Greenburg* v. *Palmieri,* 71 N. J. Law, 83, 58 Atl. 297; *Maxcy Mfg. Co.* v. *Burnham,* 89 Me. 538, 36 Atl. 1003, 56 A. S. R. 436.

██ Defendants claim that this suit cannot be maintained because Knight, one of the joint adventurers, is also one of the payees of the note. This question was not raised below, but defendant argues on the strength of *Enright & Fitch* v. *Amsden,* 70 Vt. 183, 40 Atl. 37—and *Dunshee* v. *Parmelee,* 19 Vt. 172, and *City of Montpelier* v. *McMahon,* 85 Vt. 275, 81 Atl. 977, are to same effect—that this was not necessary in order to give him

the benefit of it. Since the difficulty complained of pertains to the remedy and not to the right, we think the question comes within the general rule that we will not consider questions raised in this Court for the first time. But the claim is without merit. While it is true, generally speaking, that one partner cannot sue the firm of which he is a member, at law, on a liability arising out of the firm business, *Green & Roberts* v. *Chapman et al.*, 27 Vt. 236; *Beede* v. *Fraser & Co.*, 66 Vt. 114, 28 Atl. 880, 44 A. S. R. 824; *Moore* v. *Denslow*, 14 Conn. 235; *Kalamazoo Trust Co.* v. *Merrill*, 159 Mich. 649, 124 N. W. 597; *Ebers* v. *Dettmering*, 207 Ill. A. 539; 1 Chitty on Pl. 47; Dicey on Parties to Actions, Rule 22, "for no one can be interested as a party on both sides of the record," it is equally true that the indorsee of a partnership note payable to one of its members may maintain a suit thereon. *Norton* v. *Downer*, 15 Vt. 569; *Ormsbee* v. *Kidder*, 48 Vt. 361; *Walker* v. *Waite et al.*, 50 Vt. 668; *Pitcher* v. *Burrows*, 17 Pick. (Mass.) 361, 28 A. D. 306; *Nevins* v. *Townshend*, 6 Conn. 5; *Woodman* v. *Boothby*, 66 Me. 389; *Heywood* v. *Wingate*, 14 N. H. 73. The legal effect of such obligations, how and by whom they may be enforced, and the reason therefor is pointed out by *Barrett, J.*, in *Walker* v. *Waite et al.*, at page 676 of 50 Vt. As we have seen, however, this is not an action on the note, but rather on the indebtedness evidenced by the note.

By section 6 of the Practice Act, No. 90, Laws 1915 (now P. L. 1583), the assignee and *bona fide* owner of a non-negotiable chose in action may sue thereon in this own name, but he shall allege in his complaint that he is the actual *bona fide* owner thereof, and set forth when and how he acquired title thereto. We think plaintiff has met the requirements of this statute in both allegations and proof. The special count alleges, in effect, the indebtedness of the joint adventurers to Edmondson, Barnes, and Knight and the transfer of the same by them to plaintiff for value received and in due course of business, and the proof supports these allegations. The mortgage reads: "Whereas * * * Hodgman is justly indebted to * * * in the sum of * * * which is evidenced by one certain promissory note of even date herewith," etc. The assignment, which is a separate instrument, transfers the mortgage "together with the bond or obligation therein described." The obligation was the

364

indebtedness evidenced by the note, which was also indorsed and delivered by payees to plaintiff.

In *Hackett* v. *Moxley,* 65 Vt. 71, 25 Atl. 898, a proceeding in chancery to enforce an *equitable* claim which was evidenced by a negotiable promissory note that had been transferred by the payee to the oratrix, it was held that although the note was not enforceable it was evidence of the claim for which it was given and that the delivery of this evidence, the note, to the oratrix constituted a valid gift of such claim. It was the nature of the claim rather than the nature of the assignment that compelled the oratrix to go into chancery. This case is cited in support of the holding that the gift of a bank deposit may be consummated by the mere delivery of the deposit book to the donee, and that this vests title to the deposit in the latter. *Watson* v. *Watson,* 69 Vt. 243, 39 Atl. 201; *Goodrich's Exr.* v. *Rutland Savings Bank et al.,* 81 Vt. 147, 69 Atl. 651, 17 L. R. A. (N. S.) 181. We think the assignment sufficient to convey whatever claim the assignors had against defendant. The statute that allows an assignee of a chose in action to sue in his own name (P. L. 1583) provides that the defenses which the debtor might have made had the action been brought by the assignor shall not be affected. This we construe to mean defenses that pertain to the merits of the claim attempted to be enforced, like want of consideration, payment, release, fraud, etc., and not those that simply go to the remedy, unless something has happened to complicate or modify the claim in such a way that a judgment in a suit at law would not do legal justice between the parties, when, for reasons of substance, resort to equity might be necessary. *Walker* v. *Waite et al., supra,* at page 677 of 50 Vt. Nothing of that kind appears in this case, and we see no occasion for denying the right to maintain this suit so far as this question is concerned.

In the circumstances, Hodgman's note did not operate as payment of the indebtedness for which it was given. The only evidence touching this question was the testimony of Hodgman that he "handed over" the note in payment of the balance of the purchase price. There was no evidence that the payee accepted it for that purpose, or that Hodgman so understood, which was essential to give it the effect now claimed for it as appears from the cases cited by defendant. *Lapham* v. *Barnes,* 2 Vt. 213; *Arnold* v. *Camp,* 12 Johns (N. Y.) 409, 7

A. D. 328; *Barkley* v. *Goock*, 2 Esp. Cas. 571. Moreover, the note of one partner will not operate as payment of a partnership obligation unless accepted by the payee for that purpose with full knowledge of who the partners are. *Merrill* v. *Kenyon*, 48 Conn. 314, 40 A. R. 174; *Tyler* v. *Waddingham*, 58 Conn. 375, 387, 20 Atl. 335, 8 L. R. A. 657; *Lovell* v. *Williams*, 125 Mass. 439; *Schemerhorn* v. *Loines*, 7 Johns. (N. Y.) 311; *Muldon* v. *Whitlock*, 1 Cow. (N. Y.) 290, 13 A. D. 533; Parsons on Partnership (2d ed.) page 110. The evidence did not make a jury question on this issue.

 Defendant insists that the question of whether the note was vitiated by adding Knight's name as a payee should have been submitted to the jury. This depends upon whether the evidence tended to show that this was done after the note was signed by Hodgman, without his assent. The only evidence regarding this was the note, the mortgage, and the testimony of Hodgman. Parts of the note, including the names of the payees, are typewritten. The payees names appear thus: "J. W. Edmondson, E. T. Barnes, and W. A. Knight." The note shows that following the words "J. W. Emondson" something was written and erased, and the words "E. T. Barnes and W. A. Knight" were written. The note indicates that this change was made when it was written, but if there had been evidence to the contrary the question should have been submitted to the jury. There was not. In the mortgage which was executed at the time the note was given, and which is not claimed to have been changed, "J. W. Edmondson, E. T. Barnes of Laurens County, Georgia, and W. A. Knight *of the County of* Manatee, *State of* Florida" are described as parties of the second part. The italics are ours. Those words are part of the printed form used; the remainder of the quotation is typewritten. The order of this language, partly printed and partly typed, shows that the scrivener knew that Knight was a party when he wrote this instrument. Then, too, Knight's name appears therein as one of the parties to whom Hodgman declared that he was indebted, and this indebtedness, Hodgman says in the mortgage is evidenced by the note. Moreover, Hodgman did not testify that Knight's name was not on the note when he signed it, although the matter was called to his attention several times, in various ways; but finally said, in effect, that he might have known it was there when he signed it. With the evidence

standing thus, the court properly declined to submit this issue to the jury. This being so, there is no occasion to inquire how the alteration, if shown, would affect the original indebtedness upon which this suit is brought. See *Bigelow* v. *Stilphen*, 35 Vt. 521; *Fowler* v. *Barlow et ux.*, 102 Vt. 99, 103, 146 Atl. 77. Since defendant was not entitled to go to the jury on either of the last two questions considered, a verdict was properly directed for plaintiff.

 The note that Hodgman gave provided that if it became necessary to collect it through an attorney; by suit or otherwise, the maker would pay reasonable attorney fees. With the effect of this provision if the suit was against Hodgman, either on the note or the indebtedness, evidenced thereby, we are not concerned. The main element of the agreement represented by the note was the payment of the balance of the purchase price of the land. Thus far the agreement was strictly within the scope of the joint enterprise, and all connected therewith were bound thereby. The provision regarding attorney fees was, in effect, an agreement to pay special damages in case it became necessary to collect the note, or possibly the purchase price, through the aid of an attorney. *Eastman* v. *Sunset Park Land Co.*, 35 Cal. App. 628, 170 Pac. 642. This was clearly outside the scope of the joint enterprise, and did not bind Hodgman's associates unless they assented to it, expressly or tacitly. There was no evidence that Manley ever knew about it, consequently his estate is not liable therefor.

 The verdict and judgment included $600 for attorney fees. This was error which requires a reversal, but since the record affords the means of correcting it the case will not be remanded. *Hopkins* v. *Veo et ux.*, 98 Vt. 433, 129 Atl. 157; *Ellis' Admr.* v. *Durkee*, 79 Vt. 341, 65 Atl. 94.

*Judgment reversed, and judgment for plaintiff for $4,185.50, with interest thereon from date of judgment below, and costs below.*