ANDREW McGAFFIN et al., Appellants, v. ELIZA HELMTS et al.,
Appellees.

No. 39768.

APRIL 14, 1930.

*Swan, Martin & Martin,* for appellants.

*Tom C. Smith* and *Tinley, Mitchell, Ross & Mitchell,* for
Eliza Helmts and Wesley Helmts, appellees.

KINDIG, J.—A detailed statement of the somewhat compli-
cated facts is necessary, in order to understand the legal proposi-
tions involved.

In 1873, Alexander McGaffin and Eliza McGaffin were mar-
ried. Each had been married before. At the time of his mar-
riage to Eliza McGaffin, Alexander McGaffin, through his former
marriage, had four children, named Andrew McGaffin, Samuel
McGaffin (both plaintiffs and appellants), Mary (McGaffin)

Beach (defendant and appellee), and Sarah (McGaffin) Madison (now deceased). No representative of the last-named child is a party to this suit.

Eliza McGaffin, at the time of her marriage to Alexander McGaffin, had one child from her former marriage. This child's name was Jean Shelley (plaintiff and appellant). As a result of the marriage between Eliza McGaffin and Alexander McGaffin, three children were born. They are Anna Stoner, Alex McGaffin (both plaintiffs and appellants), and Eliza Helmts (defendant and appellee). Wesley Helmts (defendant and appellee) is the husband of the appellee Eliza Helmts.

Alexander McGaffin died October 14, 1909, and gave whatever property he owned to his wife, Eliza McGaffin. On August 30, 1926, thereafter, Eliza McGaffin died, testate. Both Eliza McGaffin and Alexander McGaffin were survived by the said Andrew McGaffin, Samuel McGaffin, Mary Beach, Jean Shelley, Anna Stoner, Alex McGaffin, and Eliza Helmts. Sarah Madison survived her father, Alexander McGaffin, and predeceased Eliza McGaffin; but certain children of Sarah Madison's survived Eliza McGaffin. These children are not involved in the litigation.

The origin of this controversy is found in certain gifts made by Eliza McGaffin before her death to her daughters, Eliza Helmts and Anna Stoner. Alex McGaffin, Jean Shelley, and the stepchildren complained about those gifts, and conferences were had by the interested parties, where it was sought to overcome the disagreements. It was at those meetings that the alleged oral contract now in litigation was made. To understand the nature of the propositions urged on this appeal, it is essential to go still deeper into the facts concerning the gifts aforesaid and the alleged settlement of the controversies arising therefrom.

Prior to her death, Eliza McGaffin conveyed, on July 30, 1925, to the appellant Anna Stoner, her daughter, by warranty deed, 240 acres of land in Cass County. Simultaneously with making the deed to Anna Stoner, Eliza McGaffin also signed a deed conveying to her daughter Eliza Helmts, the appellee, a 265-acre farm in Cass County. Earlier, on January 30, 1924, Eliza McGaffin had executed a deed conveying to the appellee Eliza Helmts, a house and lot in Atlantic. Both deeds for the farm lands (the deed for the house in Atlantic had already been delivered) were placed by Eliza McGaffin, before her death, in

escrow with the Farmers Savings Bank at Atlantic, "to be delivered [to the respective grantees] at the death of Mrs. McGaffin." Thus the deeds were held by the bank until June 30, 1926, when, at the request of Eliza McGaffin, the instruments were surrendered to her. She, upon the receipt of the deeds, delivered them to the respective grantees, the appellant Anna Stoner, and the appellee Eliza Helmts.

After those deeds were signed by Eliza McGaffin, she also, on July 10, 1926, executed a will, which was prepared at her request by Mr. Nelson, a banker. Said will recognized the execution of the aforesaid warranty deeds. Other previous wills had been executed by Eliza McGaffin. The last, however, was substantially the same as a previous one made on June 30, 1925. By the terms of the last will, in addition to recognizing the existence of the aforesaid deeds, Eliza McGaffin gave, first, $100 each to her three stepchildren, Andrew McGaffin, Samuel McGaffin (the appellants), and Sarah Madison, now deceased; second, to Eliza (McGaffin) Helmts, the appellee, all the household goods, including wearing apparel and jewelry; third, to the appellant Anna (McGaffin) Stoner, $100; and fourth, all the rest of the personal estate and property of every kind and description to the stepdaughter Mary Beach, appellee, the daughter Jean Shelley, appellant, and Alex McGaffin, the appellant, and his wife, Ida. There was a large amount of personal property. Alex McGaffin, the son, was granted certain leniency regarding the payment of his indebtedness to the testator, amounting to $15,500. A more detailed statement of this concession is not material.

Before Eliza McGaffin died, Andrew McGaffin, Samuel McGaffin, Alex McGaffin, and Jean Shelley, appellants, and Mary Beach, the appellee, became aware of the will, its contents, and the deeds to Eliza Helmts, the appellee, and Anna Stoner, the appellant. That knowledge provoked the controversy aforesaid. Anna Stoner, the appellant, thought that she should share with the other appellants and Mary Beach, as if the farm aforesaid had never been deeded to her. Hence, she signified her willingness to convey the land back into the estate. Accordingly, she did make certain conveyances, to be later noted. Mrs. Stoner felt that she should take this action because her husband's father's estate was settled in a somewhat similar way.

Eliza Helmts, the appellee, was then brought into the controversy, and was asked to make a reconveyance of the 265-acre farm received from her mother. Apparently it was conceded that the appellee Eliza Helmts should keep the house and lot in Atlantic. This is referred to as the homestead.

Contention is made by appellants that Eliza Helmts, the appellee, agreed to make an adjustment, so far as the 265-acre farm is concerned, similar to that consented to by Anna Stoner. Denial of that is made by Eliza Helmts. The exact terms of the alleged agreement are rather uncertain. It is claimed, however, by appellant Andrew McGaffin that the appellee Eliza Helmts agreed to convey the 265-acre tract ''back into the McGaffin estate.'' Samuel McGaffin, the appellant, testified that she would deed the property ''back to the estate, and divide up equally.'' According to Anna Stoner, the appellee Eliza Helmts agreed that the entire estate, including the said two farms, should be divided ''equally between Andrew McGaffin, Samuel McGaffin, Mary Beach, Jean Shelley, Anna Stoner, Eliza Helmts, and Alex McGaffin.''

Thus it is seen that much uncertainty exists concerning what it is alleged the appellee Eliza Helmts really did agree to do. If the property went back into the McGaffin estate, the question would at once arise concerning whether ''the McGaffin estate'' referred to the Eliza McGaffin or the Alexander McGaffin estate. For some reason, the appellants exclude the Sarah Madison children. Upon what theory this is done, does not appear. Should the property go back into the original Alexander McGaffin estate, these Madison children would be entitled to their mother's share. Enough has been said to indicate the lack of certainty in the alleged agreement.

However that may be, appellants argue that there was an agreement which can be given force in equity. Consideration therefor, they say, is predicated upon a purported arrangement whereby the appellants and the appellee Mary Beach agreed to pay from the Eliza McGaffin estate the $1,906 balance due for an incompleted house and other buildings which were being constructed on the aforesaid 265-acre farm received by the appellee Eliza Helmts. Such structures were contemplated by Eliza McGaffin, the mother, before her death. In fact, she contracted for their construction.. Eliza Helmts, the appellee, neither directly

nor indirectly participated in the building contract. Whatever obligation arose therefrom was created and assumed entirely by the mother, Eliza McGaffin. Under the contract, the improvements were to cost at least $6,300. Mrs. McGaffin, the mother, considered it was her duty to put these betterments on the land received by the appellee Eliza Helmts, in order that this farm would be improved similar to the one likewise given to the appellant Anna Stoner. So, on April 19, 1926, the mother paid the Joyce Lumber Company $1,600 from her savings account, to apply on the lumber bill. A little later, on May 5th, she created an account in the Farmers Savings Bank, known as "L. W. Hansen-McGaffin House Account." L. W. Hansen was a contractor. In this account Eliza McGaffin deposited $3,425, and authorized the contractor, Hansen, to draw thereon as the building work progressed. Not having cash enough to carry out the projects, Mrs. McGaffin sold certain securities, whereby she raised an additional $2,000 in cash. This sum she deposited in the bank in an account known as "The Eliza McGaffin Building Account." From said balance the $1,906 involved in the previously named controversy was paid, after Mrs. McGaffin's death. Consequently, the appellee Eliza Helmts maintains that there was no consideration in this respect for the alleged agreement, because, the mother having incurred the obligation, it was incumbent upon her estate to discharge it. Furthermore, this appellee asserts that she never at any time, directly or indirectly, entered into a contract whereby she agreed to redeem the farm to the appellants and Mary Beach, the appellee. Concerning this subject, the appellee Eliza Helmts testified:

"Shortly after Mrs. Stoner [the appellant] came from Spokane [Mrs. Stoner's home] was the first time we talked about the equal division of the property, which was before the deeds were delivered to me. Mrs. Stoner said in that conversation that she thought the rest of the children had as much right to the property as we had, and her husband's father had divided his property share and share alike, and she thought that was the way our mother should have done. I told Mrs. Stoner that she could do what she pleased with her property, and I would try to do the same with mine. I told her that she had always been able to do as she wished (because Mrs. Stoner was rich), but I

had been poor. My husband's eyesight had been the cause of our not getting along in the world as well as the rest of them, and that, when mother wanted to fix it so we could have a living, I thought it was proper to hold onto it. I talked that way to her, in substance. * * * I met Alex and two of the girls [the appellants], and I said to Alex that, instead of me taking one share of the money, personal property, and the house in town, if he would give me—fix it so it would make more acres—and give me the homestead, as it would be, I would be willing to do that [make an adjustment]. Alex said that would be impossible. * * * I never at any time said to any of them that I was willing to turn that property back and take one seventh of all, with the homestead thrown in.''

Appellants contend that the mother, before her death, stated that it would be necessary for the appellee Eliza Helmts to complete the buildings on the farm. Appellee denies this. Albena Hansen, the contractor's wife, said, concerning this matter:

''She [the mother, Eliza McGaffin] said, on several occasions, that there was no occasion to worry, because there would be enough money in the bank to take care of it [the building expense], or when she couldn't take care of it, Mrs. Helmts would. She [Eliza McGaffin] said she thought there would be enough money in the bank, but if there wasn't, they [the Helmts] would have to take care of it.''

Evidently Mrs. Eliza McGaffin understood and intended that the money especially deposited to meet the expense of the building should be used for that purpose. Stress is not laid upon the fact that consideration arose to support the agreement of the appellee Eliza Helmts through the mutual promise of the appellant Anna Stoner. Some reference in appellees' argument is made to the fact that the motive which induced Mrs. Stoner to redeed and otherwise divide was a similar division made of her husband's father's estate. A desire to emulate her husband and his relatives, appellees suggest, rather than Eliza Helmts' alleged agreement, prompted the appellant Anna Stoner to make the division aforesaid. Nevertheless, under the record here presented, it is not necessary to determine that specific performance was properly refused by the district court because the contract

is too indefinite, and lacks consideration. There is a more apparent reason why specific performance should not be granted. Reference here is made to the abandonment of the purported contract by the appellants and the appellee Mary Beach.

For the purposes of this discussion, we assume, without deciding, that there was an agreement of some kind in the general nature claimed by appellants; although, in so doing, we note that there is serious question whether there was, in fact, any such contract. Regardless of the indefinite contract assumed to exist, and the disputes concerning the consideration therefor, it is apparent that the appellants and the appellee Mary Beach abandoned the agreement, if any there was, and made distribution of the estate without reference thereto. Because of the abandonment, therefore, specific performance should be denied.

Eliza Helmts, the appellee, informed the appellants and the appellee Mary Beach, immediately after the death of the mother, Eliza McGaffin, that the house and lot in Atlantic and the 265-acre farm would be retained, under the gift aforesaid. Therefore, the contract of settlement, if any existed, was repudiated upon that occasion by the appellee Eliza Helmts. With full knowledge concerning said refusal to make distribution, the appellants and the appellee Mary Beach permitted the said will of the mother, Eliza McGaffin, to be probated, without contest or objection. Moreover, the personal estate of the testator, as well as the land received by the appellant Anna Stoner, was divided among the appellee Mary Beach and the appellants, including Anna Stoner. No part thereof was given to or reserved for the appellee Eliza Helmts. Resultantly, the personal estate of the testator, as well as the land previously given to, and then reconveyed by, Anna Stoner, was divided into six, and not seven, equal parts, and thus distributed. The number of persons concerned in the distribution under the alleged contract was seven, including the appellee Eliza Helmts. Necessarily, then, the estate should have been divided into seven equal parts, in order to carry out the purported settlement agreement. These appellants and the appellee Mary Beach all filed written receipts in the probate proceeding under the will of Eliza McGaffin for all money and property due them as the heirs and beneficiaries of such decedent. Neither the homestead in Atlantic nor the 265-acre farm held by the appellee Eliza Helmts was in any way

concerned in that probate proceeding or the distributions of property made by the appellants and the appellee Mary Beach among themselves.

Obviously, the appellants and Mary Beach acquiesced in appellee Eliza Helmts' refusal to reconvey the 265-acre farm back into the estate and take as a general heir. Anna Stoner, the appellant, in reconveying the 240 acres previously given to her by Eliza McGaffin, named as grantees in the deed the appellants Jean Shelley, Alex McGaffin, Samuel McGaffin, and Andrew Mc-Gaffin, and the appellee Mary Beach. Thus the appellee Eliza Helmts received no part thereof. In fact, Mrs. Stoner did not reserve a portion of the land for herself or the appellee Eliza Helmts. Immediately after receiving her share of the estate, the appellee Mary Beach went to her home in South Dakota, and removed there, from Iowa, a considerable portion, if not all, of the property, or its equivalent, received through the estate of Eliza McGaffin, as before explained. Mary Beach, the appellee, is not attempting to enforce the alleged agreement against the appellee Eliza Helmts. As a matter of fact, the appellee Mary Beach did not join as a plaintiff in the action brought by the appellants. Wherefore, she was made a defendant, and for that reason is now designated as an appellee. Nowhere is it shown in the record that the original notice was served upon the appellee Mary Beach in Iowa, but it appears from the suggestions of counsel that such service was made upon her in South Dakota only. She did not appear in this cause. A personal judgment, therefore, could not be entered in the district court against the appellee Mary Beach. Her property, if any in Iowa involved in the suit, might be affected by a judgment *in rem.* But part, at least, of the property formerly belonging to the mother, Eliza McGaffin, was delivered to the appellee, and taken by her to South Dakota, as before suggested. To the extent of the property thus removed, a *rem* judgment in this cause could not control the situation. So, under the circumstances, there being no personal service on the appellee Mary Beach, she could not be compelled to perform the alleged contract with the appellee Eliza Helmts.

If that part of the contract could not be enforced, then the obligations imposed upon the appellee Eliza Helmts are unenforcible. Clearly, under the facts recited, the appellants, as well

as the appellee Mary Beach, abandoned the alleged contract with the appellee Eliza Helmts, if any such agreement ever existed. Appellants are not in a position to carry out the alleged contract, because of said abandonment thereof. None of the property thus distributed by the appellants and the appellee Mary Beach was given to or reserved for the appellee Eliza Helmts. Therefore, appellants were not able "to carry out said contract at the time this case was commenced." Having abandoned the alleged oral undertaking, and placed themselves in a position where they cannot now meet its obligations, the appellants are not entitled to specific performance. *Braig v. Frye,* 199 Iowa 184; *Nielson v. Benedict,* 196 Iowa 173; *Griffey v. Lubben,* 196 Iowa 465; *Dierksen v. Pahl,* 194 Iowa 713; *Findley v. Koch,* 126 Iowa 131.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.