Nott, J.,
delivered the opinion of the court:
Under the regulations of the Treasury, concerning abandoned or captured property and the decision of the Supreme Court in *486 Whitesides’s Case (93 U. S., 247), the arrangement between the Treasury agent and the claimant, by virtue of which the seizure of the Elgee cotton was made, was utterly void. This was conceded by the claimant’s counsel on the hearing, and need not be discussed.
The question then arises upon the doctrine of ratification, which the claimant seeks to apply to the case.
If this had been an ordinary transaction between men, unquestionably the acceptance of the cotton which the claimant brought out, followed by the payment on account thereof and for an interest therein by the Secretary of the Treasury, would have been a ratification of the unauthorized agreement of the clearest and most unequivocal character. The cotton here never belonged to the claimant; he never had a valid lien upon it; his services were entirely voluntary. When he turned it over to the government he had no right to retain it, and G-en-eral Tuttle’s seizure was, in effect, the government’s seizing its own property. Nevertheless, in juivate transactions a similar condition of affairs is often found where there have been voluntary services performed, and there a clear and unequivocal ratification of the unauthorized contract by the principal renders it as obligatory as if it had been entered into by his authority. In this case the Assistant Secretary of the Treasury did not say in words that he ratified the special agent’s agreement, but he did say that the payment which he made to the claimant was a “ part of the proceeds” of the “Elgee cotton” “collected as captured or abondoned property by said Camp ” ; that the payment was “for an interest therein,” and was “an advance to said Camp.” With ah of the facts before the department, .this order of the Assistant Secretary undoubtedly was intended .as a payment upon the original and only agreement under Avhich the claimant had acted, and as a recognition of his, the • claimant’s, interest in the proceeds to the extent of at least 25 per cent, thereof. We can understand that there may have been such cases of voluntary service under unauthorized agreements where the Secretary of the Treasury deemed it to be for the honor of the government to ratify the transactions of his agents, and we are not disposed to question his authority to do so.
What, then, was the agreement which was thus ratified!
It was not a general obligation to pay the claimant for his *487 irvices. From the inception of the system authorized by the bandoned or captured property act to the present time these •ansáctions hare always been considered and treated by the ¡gislative and executive branches of the government as a usin’ess by itself, which was to be self-supporting’ and not to be-ime a charge upon the general Treasury. In law, as in fact, the greement with the claimant was not a contract binding the overnment to pay him for. his services in collecting and bring - ig out cotton, but was simply an agreement to share the pro-seds with him. His case is that of a man who agrees to grow crop-or chop wood or excavate ore for a designated portion of he crop, the wood, or the ore.
Sucli being the contract,'what would constitute a breach by he defendants 7
If I were to agree with a man to grow a crop on his land for .share of it, with the further condition that the whole should amain in his possession until sold by him for our joint benefit,
; would doubtless be a breach for him to convert my share to is own use. But no breach could be imputed to him if the rop, including my portion, were taken from him by the pro-ess of .a court in the suit of a third person; and if I, with a uperior right or equity as to my portion, should stand by and llow the suit to go to judgment raising no objection and inter-osing no defense, I certainly should not be able to set up my wn inaction as a ground for recovering damages from him. aid this is substantially the condition of the claimant’s case. When the agreement with the assistant Treasury agent was ntered into, assuming it now to be valid, it may have been upposed by the parties that the cotton to be brought out muid be quickly sold and the net proceeds readily ascertained nd easily apportioned. But hardly had' the cotton come to lie possession of the government ere the former owner appeared, sserted his title, and invoked the process of a court to regain ossession. The obligation of the government to sell the cot-on and share with the claimant in the proceeds was certainly impended.. As a part of that litigation, apparently with the ssent of the claimant and certainly without objection by him, he government did whatj as custodian of the property and ctual litigant in the suit, it certainly had a right to do — it ntered into a stipulation which provided that the cotton should >e sold, the proceeds be invested in bonds, the bonds be sub *488 stituted as tlie subject of litigation, and tlie litigation trans ferred to the United States courts.
The time when that litigation ended has not been shown bj either party, though both have referred to it in their requests nor has the ground of the decision been made a matter o evidence. As the facts, however, are well known, and wer< alluded to by counsel on both sides in the argument, we assume for the purposes of this decision, that the suit in the Unitec States courts was decided against Elgee under the decision o the Supreme Court in Mrs. Alexander’s Case (2 Wall., 404) viz, that the only and proper remedy for the owner of cap tured property was a suit for the proceeds in the Court o: Claims, which court alone had full and complete jurisdiction o: the matter. Accordingly the representatives of Elgee, he hav ing died, brought their suit in this court on the 30th March 1868, to recover the whole of the proceeds in the Treasury, ant the litigation which was to determine the rights of Elgee, the rights of the government, and the rights of all other parties claiming the cotton or its avails, proceeded in this court.
It is not necessary for the purposes of this decision to holt that the present claimant acquired by his ratified agreement an interest or special property in the cotton which constituted him an owner within the meaning of the abandoned or captured property act, although the decision of the Supreme Court in Villalonga’s Case (23 Wall. 35), holding that a factor’s' lien was a special property upon which the factor could maintain a suit as owner for his interest in the proceeds, would go far tc justify such a conclusion; but it seems tolerably clear that ii the claimant could have maintained any action against the defendants for his interest in captured property or in its proceeds in the Treasury, while such proceeds were the subject oi litigation, it must have been a suit under that statute.
Be that as it may, the claimant neglected to bring a suit foi his interest in the proceeds, and after the time for bringing such suits had expired he brought his present action upon the contract; that is to say, a personal action against the United States for their alleged non-fulfillment of the contract. Ii seems manifest that when the action was brought, at a time when the owner’s litigation was still pending and undetermined, the defendants were not bound to comply with the claimant’s demand, and were in no sense guilty of a breach of their agree- *489 meat. They were simply the custodians of a fund, in litigation, of which he claimed a part.
Nevertheless, the defendants, as parties litigant in this court, made an attempt to have the claimant Gamp interplead with the other claimants seeking the fund. • He resisted the motion and it was overruled (5 C. Cls. R., 645), but the court when denying it said :
“ The suit of Camp is in effect an action brought against trustees for services rendered to the trust estate. * * * Gamp has brought his action before the trust estate is actually closed, though' not within the two years prescribed by law for closing it, and it may be that he has a good and valid claim against the trust estate. The trustees should not be required to pay over all the proceeds to the cestui que trust and then be held personally liable to Gamp; nor should Camp be left without redress, if his claim be valid and his suit be not barred.
“ It is perhaps needless to add that this opinion does not adjudicate either case upon its own merits, but merely deals with them as they appear upon this motion.
“The motion to interplead must be denied. But when the case of Woodruff shall be tried, if it shall then appear that this case of Camp is still pending, proceedings upon the judgment will be stayed, or a decree directing payment of a part of the proceeds will be rendered, with leave to apply for an order directing the payment of the residue, if any, when the estate shall be.finally closed.”
Neither the defendants nor the claimant Camp availed themselves;, of the remedy indicated when the consolidated cases of Woodruff and Elgee were tried. No motion was made to stay proceedings upon the judgment or to withhold payment of a portion sufficient to meet this demand. On -the contrary, the case went to the Supreme Court, remained pending there for several years before a final decisionwas reached, and during all of these years the claimant remained inactive, neither bringing his present suit to trial nor taking steps to arrest the paying away of the fund in which he claimed an interest.
But the case must be adjudged as of the time when the claimant brought his action. He has not sued for acts or negligen-ces which may have occurred since then. His cause of action s that which existed on that day, and upon that day we think t clear no breach had been committed by the defendants which could give foundation to this suit.
The judgment of the court is that the claimant’s petition be lismissed.