E. G. BARTON et al., Appellees, v. JAMES J. WAMSLEY, Appellant.

PLEADING: Answer—Collateral Facts Impeaching Title. A purchaser of land who is defendant in an action for specific performance may not obtain the benefit of collateral facts which impeach the record title by developing such facts on the examination of witnesses *without the tender of any plea thereof.* So held where the collateral fact was to the effect that parties not shown by the record had an equitable interest in the land.

QUIETING TITLE: Equitable Ownership—Interest of Silent Partner. A conveyance of land by the legal title holder is unassailable by a silent partner who has furnished a portion of the purchase price and caused the title to be taken in the name of the other partner in order that a sale may be made.

*Appeal from Van Buren District Court.*—SENECA CORNELL, Judge.

OCTÓBER 17, 1922.

SUIT in equity for specific performance of a contract of sale of land, whereby plaintiff, as vendor, seeks to recover from defendant, as vendee, the agreed purchase price. The defense pleaded was twofold: (1) That the contract was entered into on Sunday, and was, therefore, void, and that the defendant repudiated the same; (2) a general denial. There was a decree for the plaintiff for the relief prayed, and the defendant has appealed.—*Affirmed.*

*Roberts & Webber,* for appellant.

*Walker & McBeth,* for appellees.

EVANS, J.—I.  On January 10, 1921, the parties hereto entered into a written contract, whereby the plaintiff agreed to sell and the defendant to buy a certain farm of 160 acres, at an agreed price of $45,250. A part of the purchase price was then and there paid. This farm was formerly owned by de-

fendant, Wamsley, and was sold by him to plaintiff Barton on July 2, 1919, for a consideration of $44,000. That contract of sale was fully executed on March 1, 1920. Wamsley, however, continued in possession of the farm, as a tenant of the plaintiff's, and was in possession thereof on January 10, 1921, when the contract in suit was made. The contract in suit was executory, and provided for performance on the first day of March, 1921. The plaintiff tendered performance at that time, according to the terms of the contract. In the meantime, defendant had rued the purchase, and refused to perform. He based his refusal upon specified grounds which were untenable, and which he has since wholly abandoned. The plaintiff made timely tender of deed and abstract. On their face, these were in strict conformity to the requirements of the contract. In the absence of affirmative defense, the plaintiff would, therefore, be presumptively entitled to a decree. But the defendant pleaded an affirmative defense. This was that the contract between the parties was entered into on Sunday, January 9th, rather than on January 10th. At the trial, the evidence on that question was so conclusive against the defendant that he abandoned the issue, and does not press the same before us.

The real defense now presented by the defendant is based upon a state of facts which was developed by him by the examination of witnesses during the trial, and which was not pleaded. This defense is that, on July 3, 1919, Barton entered into the following contract with one Graham and one Mann:

1. PLEADING: answer: collateral facts impeaching title.

"This agreement entered into this 3d day of July, 1919, by and between E. G. Barton, first party, D. E. Graham, second party, and C. G. Mann, third party, witnesseth:

"That whereas C. G. Mann has closed a contract between James Wamsley and wife and said first party for the purchase of the northeast quarter of Section 36, Township 70, Range 9 in Van Buren County, Iowa. It is hereby agreed as follows:

"That as a matter of fact, said first party and said second party are each to furnish one half of the consideration in pur-.chasing said premises, but the title to said premises is to be taken in the name of E. G. Barton. Said first and second party hereby agree that in consideration of third party's services pur-

chasing said farms and looking after the same, renting, market-
ing, etc., it is hereby agreed that when said premises are sold,
third party shall receive one third of the net profits of said en-
tire transaction.  First and second parties to be allowed 6 per
cent interest on two thirds of all funds invested in this deal in
figuring said profits.  It being further understood that parties
hereto are each to pay one third of the regular commission for
the sale of said premises whether the same is made by third
party or another agent.''

[Duly signed.]

The argument is that this contract conveyed to Graham and
to Mann an equitable interest in the land in controversy, and
that nothing less than deeds, duly signed by Graham and Mann
and their wives, would be a compliance with Barton's contract
of a sale to Wamsley.  The undertaking of Barton in his con-
tract was as follows:

''The said E. G. Barton and Martha W. Barton, party of
the first part has bargained and hereby sells and agrees to con-
vey by warranty deed on or before March 1, 1921, to the said
party of the second part or his assigns the real estate of the
said party of the first part, situated in Van Buren County, state
of Iowa, more particularly described as follows, to wit:  The
northeast quarter of Section Thirty-six (36), Township Seventy
(70), Range Nine (9) in Van Buren County, Iowa, containing
160 acres more or less according to government survey, together
with all and singular the appurtenances thereto belonging, and
to deliver such conveyance as aforesaid, together with abstract
of title, showing merchantable title of record in said first party,
free from incumbrance except a twenty-four thousand ($24,000)
dollar first mortgage bearing six per cent (6%) annual interest,
due March 1, 1925.''

This contract was not intended for record, and was not re-
corded.  It was not, however, covered with secrecy, and the fact
that Graham, and perhaps Mann, had some such arrangement
with Barton was known to Wamsley.  The abstract of title fur-
nished to Wamsley disclosed a merchantable title, and precisely
the same title that had been furnished to Barton by Wamsley.
If Wamsley had frankly raised any question about the Graham
contract prior to the suit, or had affirmatively pleaded it in the

suit, a court of equity would undoubtedly have been disposed to solve all doubts in favor of the purchaser, and to have required the removal of all possible cloud upon the title by the presenting of quitclaim deeds or otherwise. But Wamsley raised no question concerning the contract, either verbally or in his correspondence or in his pleading. The plaintiff, having made his tender in strict accord with his contract, was under no burden of anticipating an affirmative defense or of pleading a negative. Whether the defendant failed to plead this defense because he wished to use it as a masked battery, or because he deemed it unavailable as a defense, is not material. The burden was upon him to plead it. The title of plaintiff was presumptively proved by the records and the abstract thereof. If there were collateral facts which impeached the title appearing upon the record, it devolved upon the defendant to plead and to prove them. The contention for defendant is that he was entitled to prove this defense, under his general denial. In his amendment to his answer, his general denial was somewhat amplified, as follows:

"Defendant, further answering, and without waiving any of the objections to said contract and its invalidity on account of its having been executed on Sunday, January 9, 1921, states that, while he was at Stockport, ready, willing, and able to comply with his contract on March 1, 1921, and on March 2, 1921, that the plaintiffs and no one for them was there, ready, willing, and able to convey said lands in compliance with said contract, and this defendant further states that said plaintiffs were not at that time able to convey said lands and furnish an abstract of title showing a merchantable title to the same, and that at no time since March 1, 1921, have they been able to furnish an abstract showing merchantable title to said lands."

There is not a suggestion in the foregoing that any collateral fact was relied on to impeach the apparent title disclosed by the abstract of the records. It must be said, therefore, that the defense here relied on is an affirmative one, and was not pleaded.

II. Our conclusions set forth in the above would ordinarily be a sufficient disposal of the appeal. But it would be a severe one, in the sense that it would leave the defendant's

2. QUIETING TITLE: equitable ownership: interest of silent partner. title to the land purchased, apparently be-clouded to an extent not warranted by the record. The plaintiff, too, has met the defense largely upon its merits, regardless of the question of pleading. It is to the substantial interest of the defendant, therefore, that we pass upon the merits of his defense, even though we pass adversely thereon.

Did Graham have an equitable interest in the title to this land by virtue of his contract with Barton? He furnished one half of the purchase money. He was called as a witness by the defendant, and testified that he "was a silent partner in the transaction wherein Dr. Barton purchased the land in question from Mr. Wamsley." The contract between these parties ·by its terms contemplated a purchase and a sale. The legal title was to be held by Barton. He was necessarily authorized to convey the full title, pursuant to a sale. As between Graham and Barton, the contract amounted to one of qualified partnership, or a joint adventure, which is the equivalent of a qualified partnership in a particular transaction. *Heard v. Wilder,* 81 Iowa 421; *Winter v. Pipher & Co.,* 96 Iowa 17; *Lutz v. Billick,* 172 Iowa 543; *Mallory v. Russell,* 71 Iowa 63; *Paige v. Paige,* 71 Iowa 318.

The argument for the defendant is that Graham invested his money, and necessarily had an interest to such extent in the *land* in which the money was invested. Except for the inter-·vention of the partnership entity, this argument would be sound. But the partnership was a legal entity. Graham's investment was *in the partnership,* and for the purpose of enabling the partnership to acquire assets. Barton held the legal title as trustee, not for Graham, but for the partnership. A conveyance by Barton, pursuant to the contract, would be a good and valid conveyance of the title, and would be unassailable by any partner. The right of the partnership would attach to the proceeds of sale, and these would be subject to equitable distribution between the partners, upon a dissolution of the partnership. The conclusion of the transaction of purchase and sale and the restoration of the respective investments of the partners and the division of the profits would dissolve the partnership.

It follows, therefore, that the interest of Graham, in a di-·

rect and legal sense, was in the partnership, and not in the real estate which was owned by the partnership. It is needless to cite authorities to the proposition that the wives of the partners have no dowable interest in the real estate of the partnership.

As to Mann, we are of the opinion that he was not even a partner. He was a broker, who stipulated for a share of the profits as a part of his compensation. *McCarney v. Lightner*, 188 Iowa 1271.

In view of the ease with which a good title may be clouded, and the selling value of the property may be thereby greatly depreciated, without substantial cause, we should be much disposed to strain a point to remove from this title all possible cloud thereon, notwithstanding that it has been created by the defendant himself. If the defendant will present a motion herein, supported by a showing that he believes in good faith that his title is threatened, directly or indirectly, by the existence of the contract under consideration, we will consider further, upon a submission of such motion, whether to require that quitclaim deeds, duly executed by Graham and Mann and their wives, respectively, be offered and filed, as a condition to a final decree of specific performance. In any event, however, the cost of this appeal must be taxed to this defendant.

The decree entered below is affirmed.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.