JENS NIELSON, Appellant, v. ALLEN BENEDICT, Appellee.

**SPECIFIC PERFORMANCE: Right to Remedy—Failure to Perform.**
Specific performance will not be accorded to a vendor of real
estate when he shows failure and inability to perform under his
contract, especially when his conduct prior to instituting the action
savors strongly of a determination to abandon the contract.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

JUNE 22, 1923.

ACTION in equity, for the specific performance of a contract
to purchase real estate. Decree dismissing plaintiff's petition,
and he appeals.—*Affirmed.*

*Herrick & Herrick,* for appellant.

*McCulla & McCulla* and *T. E. Diamond,* for appellee.

STEVENS, J.—This is an action in equity by the vendor, to
compel the specific performance of a contract to purchase real
estate. The contract bears date June 28, 1920, and expresses a
consideration of $64,000, to be paid as follows: $3,000 on the
execution of the contract; $21,000 March 1, 1921; and the bal-
ance, of $40,000, by the assumption of two mortgages, one for
$25,000 and one for $15,000, both maturing March 1, 1921. The
further material provisions of the contract are as follows:

"After all of the payments have been made on March 1,
1921, as herein set out the party of the first part is to deliver
to the party of the second part a warranty deed with the usual
covenants conveying the premises herein described and an ab-
stract of title to date of transfer showing a merchantable title
in himself free from all liens of every kind except the two mort-
gages herein set out."

Appellee was unable to pay the balance of the purchase price on March 1, 1921; and, according to his testimony, he informed appellant, on or about February 28th, that he could not make the payment unless appellant would accept the assignment of a mortgage of $17,000, in lieu of that amount of cash. Appellant testified, however, that appellee said he could not complete the transaction for three or four days, or until he could see a party from whom he expected to get the money. Appellee was never thereafter able to make the final payment, and this action was commenced in September, 1921.

Appellant, in his petition, alleged full compliance on his part with all of the terms and conditions of the contract. Appellee filed answer, admitting the execution of the contract, together with the payment of $3,000 on the date thereof, as alleged in plaintiff's petition, but denied all of the remaining allegations of the petition. He alleged that appellant did not, on or before February 1, 1921, or thereafter, until upon the trial of this case in the court below, deliver or offer to deliver to him an abstract for examination, or a deed conveying the premises to him; that appellant did not, in fact, on March 1, 1921, or for a long time thereafter, possess a merchantable title to the farm; that the abstract tendered upon the trial was defective, in that it did not show the maturity of the $15,000 note, or the payment of the interest thereon to March 1, 1921; that appellant, after said date, abandoned the contract, and has at all times asserted absolute ownership of the farm. As stated, the court dismissed plaintiff's petition, and a judgment was entered against him for costs.

The conceded facts as to the tender and delivery of the abstract are substantially as follows:  The $15,000 mortgage described in the contract was executed by William W. Bryant and wife to Annis & Rohling Company, of Council Bluffs. The date of the acknowledgment thereof is December 31, 1919. It was filed for record January 5, 1920. An abstract was furnished with this loan to the mortgagee; but, on December 16, 1920, it was returned to the Leghorn State Bank of Leghorn, Iowa, where the notes and mortgage were executed and acknowledged by the Bryants, for the purpose of having title to the land quieted against a prior unreleased mortgage. It was retained

by the bank until the latter part of February, when it was sent to an abstracter at Primghar, for extension. It was forwarded early in March to a firm of lawyers at Cherokee, for their use in commencing an action to quiet title to the farm. Appellant testified that he informed appellee, prior to February 1st, that the abstract was at the bank, and that he could have it by calling therefor. Appellee denied that appellant told him that the abstract was at the bank, and testified that he did not know it was there. He admitted that it would have been convenient for him to receive the abstract at that place. It is conceded by appellant that he did not make a physical tender of the abstract and deed to appellee until the trial of this case in the court below. An action to quiet title to the land was commenced some time in June, 1921, in the name of appellant. Decree quieting title thereto in appellant was entered on September 9th following. The abstract introduced in evidence did not show the maturity of the $15,000 note. A certified copy of the mortgage introduced in evidence disclosed that the due date was not thereon stated.

It is claimed by appellant that appellee assumed possession of the farm prior to March 1, 1921, and that he caused some tile to be put in, a hog house to be torn down and reconstructed, and a portion of the farm seeded to grass. The facts upon this point are not in serious dispute. The farm was occupied and cultivated by a tenant during the year 1920, under a written lease from appellant for a term of one year, with the privilege of renewing the same for a further term of two years. Appellee admitted that he told the tenant that he could remain upon the farm if the deal was closed, and that he put in some tile, and partially reconstructed a hog house. He did not deny that he furnished grass seed, and caused a small portion of the farm to be seeded. The tenant had not, at the time of the trial, paid the rent for 1921. Appellant and the tenant owned some hogs in partnership. These were kept and fed upon the farm until in September, 1921. According to appellant, this was done to accommodate appellee, who desired to purchase his interest in the stock. A division was made immediately after appellee refused to consummate the purchase, and the appellant's share of the hogs removed from the premises.

It appears that appellant executed a mortgage on the farm to the Leghorn State Bank in May, 1921, to secure a pre-existing indebtedness to said bank of $5,800. This mortgage was released a few days before the trial.

It was incumbent upon appellant to prove strict compliance upon his part with the terms of the contract. This required him to deliver an abstract to appellee by February 1st, and, upon the payment of the balance of the purchase price, to deliver him a warranty deed, together with an abstract showing a merchantable title. *Dierksen v. Pahl,* 194 Iowa 713; *Barton v. Wamsley,* 194 Iowa 591; *Martin v. Roberts,* 127 Iowa 218; *Spooner v. Cross,* 127 Iowa 259. The balance of the purchase price was never paid by appellee, and appellant was not, of course, required to deliver the deed to him. The placing of an abstract in the Leghorn State Bank was not a compliance with the contract, which made it the duty of appellant to deliver it to appellee, nor was it sufficient that appellee was notified that an abstract was there for his use. According to appellant's version of the conversation which he claimed he had with appellee before February 1st, the latter did not object to receiving the abstract from the bank; but, as stated, appellee denied that appellant ever told him that an abstract was at the bank for his use. This evidence did not show compliance with the contract. It is true that appellee could have waived a strict compliance with this provision of the contract, but waiver is neither pleaded nor claimed by appellant.

Whether the failure of the abstract to show the maturity of the $15,000 note affected the merchantable character of the title, we need not determine. The records of the recorder's office did not show this fact. The contract provided that the two mortgages which appellee agreed to assume matured March 1, 1930. It was incumbent upon appellant to in some way prove that the mortgages did not mature until that date, and that the interest was paid thereon up to March 1, 1921. *Crandall v. Jacobs,* 195 Iowa 296. The $15,000 mortgage contained a clause for the acceleration of the due date in the event that the taxes on the land or the interest on the mortgage were in arrears for more than 10 days. These requirements of the contract were not met by the evidence. Appellant did, however, after both

sides had rested, and the opening argument had been made to the court, request that the case be reopened so as to permit him to introduce parol evidence of these matters. The court denied the request, expressing, in his ruling, doubt as to the admissibility of parol evidence to show the maturity of the note.

Appellant did not claim that his failure to introduce evidence of these matters was due to oversight or inadvertence. He offered no excuse for his failure to offer the proof before the evidence was closed. The court would not, however, have abused its discretion if the case had been reopened, and appellant permitted to show by competent evidence that the $15,000 note matured March 1, 1930, and that the interest thereon had been paid, as required by the contract. In view of the conclusion reached on the record as a whole, the result is not affected by the failure of appellant to introduce evidence on this point. Appellant did not have a merchantable title to the farm on March 1, 1921, and was himself unable to comply with the terms of the contract. It is urged in argument that the alleged incumbrance complained of by the holder of the $15,000 mortgage did not affect the merchantable character of the title. This may be true, but the fact that the mortgagee demanded the removal of the cloud created thereby upon the title, and that appellant acquiesced therein and incurred the expense of an action to quiet title, is sufficient to show that the title was not merchantable. *Fagan v. Hook,* 134 Iowa 381.

Furthermore, the evidence tending to show the abandonment of the contract by appellant is quite persuasive. The action to quiet title was commenced and prosecuted upon the demand of the mortgagee alone. The mortgage executed to the Leghorn State Bank to secure an indebtedness of appellant to it of $5,800 was executed in May, 1921, without the knowledge or consent of appellee. Both of these transactions amounted to an assertion by appellant of absolute ownership of the farm. It is true that he testified that the bank agreed to release the mortgage at any time, so as not to interfere with the consummation of the contract with appellee; but the execution of the mortgage is wholly inconsistent with the claims now asserted by him.

It is argued that appellee was never ready or able to carry

out the contract, and that a delivery or tender of the abstract and deed to him would have been an idle ceremony, and that the tender made at the time of the contract was sufficient. We are constrained, however, to hold, upon a careful consideration of the entire record, that the decree of the court is equitable, and must be sustained. A tender of abstract and deed at the time of the trial is sometimes, no doubt, sufficient; but our conclusion in this case does not rest only upon the failure of appellant to carry out the contract strictly in this respect, and we need not discuss this question.

The judgment of the court below is—*Affirmed.*

Preston, C. J., Weaver and De Graff, JJ., concur.