**McCAUSEY v. BURNET, Commissioner of Internal Revenue.**

**WOLF v. SAME.**

**Nos. 5077, 5078.**

Court of Appeals of District of Columbia.
Argued April 9, 1931.
Decided May 4, 1931.

Lawrence A. Baker and Henry Ravenel, both of Washington, D. C., for appellants.

Sewall Key, C. M. Charest, and J. H. Mc. Evers, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Petitions involving income taxes for the years 1919, 1920, and 1923, to review orders of the Board of Tax Appeals of April 16, 1929. 16 B. T. A. 8.

These causes arise upon a refusal of the Commissioner to allow the deduction of certain losses alleged to have been suffered by petitioners in a transaction involving the purchase and sale of certain bank stocks. The Commissioner's determinations were sustained by the Board, whereupon these petitions were filed.

It appears that in the year 1919 the taxpayers McCausey and Wolf were officers and stockholders of the Commonwealth Savings Bank of Detroit, Mich., and that together with eighteen other stockholders of the bank they formed a syndicate to purchase a controlling interest in the Federal State Bank of Detroit, with a view to consolidating the two banks. In pursuance of this project, the syndicate purchased 1,716 shares of federal bank stock at the price of $182.83 per share, the total cost being $313,732.50, and this gave it a controlling interest in that bank. The syndicate borrowed the money with which to pay for the stock on notes signed by its individual members. The two banks were then merged under the name of the Commonwealth-Federal Savings Bank, and stock was issued by the consolidated bank and exchanged share for share for the stock of the constitutent banks. The syndicate accord-

492

ingly received 1,716 shares of the stock of the new bank in exchange for the 1,716 shares held by it in the federal bank.

The syndicate then offered this stock for sale, and succeeded in selling 367 shares to persons other than its members, at a price of $110 per share. The remaining shares, 1,349 in number, were "sold" at the same price to its members. The syndicate accordingly realized the sum of $188,760 for the stock handled by it, as compared with the sum of $313,732.50 which was originally paid for it. A payment of $50,000 was made in 1919 on account of the liability incurred by the syndicate in the purchase of the federal bank stock, of which amount McCausey paid $5,-239, and in 1920 he paid $2,700 on the same liability. In 1923 Wolf paid $8,000.16 as part of the liability incurred by him as a member of the syndicate in satisfaction of the syndicate loss. These amounts were deducted by the respective parties in their income tax returns for the appropriate years as losses sustained in such years. The Commissioner disallowed the deductions, the Board sustained this ruling, and the issue is thus before us.

■ In our opinion the records do not sustain the claims of the taxpayers. The transaction whereby the syndicate received 1,716 shares of the stock of the consolidated bank in exchange for 1,716 shares of stock of the federal bank did not result in any taxable gain or loss. This statement is sustained by section 202 (b) Revenue Act of 1918 (40 Stat. 1060), which reads in part as follows: "But when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged."

■ Accordingly, if the syndicate as such had filed a separate income tax return while still retaining title to the consolidated stock, no deduction for loss would have been allowed for the transaction, notwithstanding that the federal stock had cost it $313,732.50, whereas it appraised the consolidated stock at only $188,760. We are of the opinion that the same rule applies to that portion of the stock which was afterwards transferred by the syndicate to its individual members. The syndicate was not a corporation, nor was it a partnership or other separate legal entity. It was no more than a "joint adventure"; that is, a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Bouvier's Law Dictionary, "Syndicate"; 33 C. J. 841, "Joint Adventures." Accordingly, when the federal bank stock was purchased by the syndicate, it became the property of the members thereof, and, when the consolidated bank stock was received in exchange, the members of the syndicate became the owners of it, and, so far as appears, continue to own it. The subsequent distribution of the stock among the members was not a sale, but simply a division of the shares among the joint owners. The transaction still fell within the rule prescribed by section 202 (b), supra.

There were, however, 367 shares of the consolidated bank stock which were actually sold to persons other than syndicate members at the price of $110 per share, and this resulted in a loss to the syndicate members. The records, however, do not disclose facts sufficient to allocate to petitioners definite proportions of such loss.

The decisions of the Board of Tax Appeals are affirmed.