TRUST NO. 5833, SECURITY–FIRST NAT. BANK OF LOS ANGELES v. WELCH, Collector of Internal Revenue.

No. 6582.

Circuit Court of Appeals, Ninth Circuit.

Dec. 7, 1931.

Miller, Chevalier, Peeler & Wilson, Melvin D. Wilson, Dana Latham, Gibson, Dunn & Crutcher, and Henry F. Prince, all of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., Ignatius F. Parker, Asst. U. S. Atty., and Alva C. Baird, Asst. U. S. Atty., all of Los Angeles, Cal. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is an appeal from a judgment in favor of the defendant. The facts are stated clearly and briefly by the District Judge in his memorandum opinion, and for that reason we quote therefrom as follows:

"This is an action to compel refund of $4,147.93, representing federal income taxes computed at the prevailing corporate rate for the calendar year 1928. The amount sued for was paid under protest by plaintiff, Security First National Bank of Los Angeles, as trustee, to the defendant collector. The sole question for decision is whether the project or enterprise denominat-

ed Trust No. 5833, as it is disclosed by the evidence, is an association within the purview of section 701 (a) (2) of the Revenue Act of 1928, 26 USCA § 2701 (a) (2). The pertinent part of that section reads: 'the term "corporation" includes associations, joint-stock companies, and insurance companies.' The defendant collector demanded and collected the tax from plaintiffs upon the ground that it was an association as described in the Revenue Act aforesaid. The plaintiffs contend that such ruling was erroneous and illegal, and that the enterprise under consideration is shown by the evidence herein not to be an association within the aforesaid section, but that it is to be considered solely as a fiduciary for income tax purposes. It is admitted that, if the enterprise is properly classified as an 'association,' the amount sued for cannot be recovered by plaintiff herein.

"The following facts have been established: In October, 1924, one Cotton, a real estate operator in Los Angeles, Cal., in association with other persons, undertook to acquire by purchase a tract of approximately 90 acres of land, to improve the same by laying out streets and other ways, to install sidewalks, water, electricity, and other utilities therein, and to subdivide the tract into city lots and to sell them to the public at a substantial profit. The scheme involved an outlay of capital both for the purchase price of the acreage and also to pay for the improvements and subdivision expenses. The land was owned by the Southern California Edison Company, which agreed to sell it to Cotton and his associates for $810,000. The contemplated improvements amounted to approximately $250,000. A written contract of sale of the tract was accordingly entered into by one Farran acting as the agent of the buyers and promoters, Cotton and his associates, and the Southern California Edison Company, the seller. The agreement provided for the payment of $100,000 in cash and the balance of the purchase price within 90 days of the date of the contract. In order to finance the project, a syndicate of some 40 persons was organized. These persons were invited by Cotton and his associates to subscribe and invest various amounts of money in the undertaking ranging from $1,000 to $15,000 each. The purpose of the syndicate as well as the invitation to join therein was to enable the participants to realize a profit upon their investments in the project. The aggregate amount realized from such subscriptions was $250,000. The contract with the Edison Company was assigned to the Security Trust & Savings Bank, predecessor of one of the plaintiffs herein as trustee. Concurrently, the subscribers of the $250,000 paid their money to said trustee. The Security Trust & Savings Bank, as such, advanced the further sum of $400,000 to the project, and took a first lien upon the assets of the enterprise as its security for payment of such loan with interest. An additional sum of $212,500 was advanced by Cotton and an associate, Bryan, and these two took a second mortgage on the assets of the enterprise as security for the payment of their loan, with interest. The moneys thus obtained in accordance with a written instrument denominated as a declaration of trust, Trust No. 5833, were applied on the purchase price of the 90-acre tract of land.

"The declaration of trust under which the project was so launched and carried out is a lengthy document that has been introduced in evidence herein, and that has been carefully considered by the court. I consider it unnecessary to set it forth in extenso. Suffice it to say that it conforms generally to similar instruments common in the realty subdivision activities of Los Angeles, Cal., and is what is popularly known therein as a 'real estate subdivision trust.' It was executed by the Security Trust & Savings Bank as trustee, Dean Farran, acting on behalf of Cotton and associates as trustor, and the subscribers or investors of the $250,000 as beneficiaries. It provided a complete, and to some extent a self-executing, scheme for the payment of the purchase price of the property; the payment of the two mortgage loans; the reimbursement of those who had subscribed and invested money therein; the payment of all expenses attendant upon the improvement and subdivision of the tract of land and for the sale of the entire subdivided parcel of real property. It declared that all beneficial interest in the trust is owned by the investors of the $250,000, and that such interest be divided into units of $1,000 each, and that each beneficiary shall be deemed to hold one of such units for each $1,000 that he had paid into the trust or should thereafter pay into it. It provided that, in all dealing with the trustee and the beneficiaries, the trustee shall be bound by the written direction of any three of the board of five beneficiaries termed the 'board of syndicate managers,' which board was chosen by the subscribers of the $250,000, and had power to establish the price at which the real property was to be sold by the

trustee; to fix the terms of sale; the manner, method, and time of disposition of the proceeds of such sale; the person to whom all money coming into the hands of the trustee under the declaration was to be paid after certain payments rigidly fixed by the declaration of trust had been made; the amount of such payments; to fix the restrictions, covenants, conditions, and reservations under and upon which the property or any part of it shall be sold; the form of deeds and contracts to be executed by the trustee in case of any sales; to fix and determine the manner, method, cost, and improvement of the property; and in all other respects to have the power to bind each and every beneficiary in all dealings with the trustee and with other parties in connection with the subdivision and sale of the property. It provided that no lot is to be sold by the trustee for less than the minimum price thereof fixed by a schedule of minimum prices that was annexed to said declaration and made a part thereof, but, as before stated, it gave to the syndicate managers the power of fixing the prices at which the property of the subdivision might be sold. A real estate firm of Los Angeles was irrevocably constituted the agent of the beneficiaries for the sale of the property for a period of two years from the date of the declaration of trust, but, as just adverted to, the sales agency could sell the real property only upon such price, terms, restrictions, and covenants as were fixed by the board of managers by written direction to the trustee and subject to such conditions. The sales agency could direct the trustee to convey the property with the same force and effect as if such direction had been given by the board of managers' direction. At the expiration of two years, the board of managers were authorized to designate some other agency, if it so desired, for the sale of the trust property.

"The trustee is directed to apply the proceeds of sales to the payment of taxes, costs, charges, and expenses, etc.; to the payment of its own services; to the payment of money loaned the project by the bank, by Cotton, and by others, and to the payment to the subscribers to the amount that they had subscribed to the project and certain additional amounts specifically mentioned and designated in the trust instrument, and, in addition, to pay as directed by the board of managers any further amount of money that would be received by them on account of sales of real property of the trust as directed by the board of syndicate managers.

"The declaration provided that the beneficiaries agreed that they would subdivide and improve the real property as provided in the trust instrument, and that such work of improvement would be installed and completely and fully paid for within two years of the date of such instrument.

"It also provided that the trustee may resign and discharge itself of the trust by a written notice to the board of managers thirty days before such resignation shall take effect, and successor may thereupon be appointed by an instrument in writing executed by the beneficiaries and accepted by the successor trustee. Should the beneficiary fail to make such appointment before the expiration of such thirty-day period, then the trustee may thereupon appoint a temporary successor trustee to fill such vacancy until such successor be appointed by the beneficiaries, and it further provided that any such successor should be vested with all the estates, rights, powers, and duties of its predecessor trustee. It was also stated in the declaration of trust that no sale or transfer of beneficial interests under the trust shall be valid or binding upon the trustee until the instrument making such assignment or transfer shall have been approved by and deposited with the trustee excepting only where such interest may pass or be transferred by a judgment or decree of court, and then only upon proof satisfactory to the trustee of the legality and validity of the procedure in such matters being presented to the trustee. It stated that the legal and equitable title to the real property was vested in the trustee for the purposes of administering the trust, and that no person beneficially interested in the trust has any right, title, interest, or estate in the property covered by the declaration, nor has any person beneficially interested under said declaration of trust any right or power to apply for or secure a dissolution or termination of the trust or partition or division of any of the trust estate; it being further recited that the entire beneficial interest of any and all beneficiaries under the declaration of trust is personal property only consisting of the right to enforce the performance of this trust according to its terms. It was further provided in the declaration that the trust shall continue to and until the sale and disposition in fee of all the property subject to the trust and the disposition of all proceeds thereof in accordance with

the terms of said declaration of trust or until the expiration of twenty-five years, whichever event shall happen first. There are other and further provisions in the declaration of trust, but sufficient has already been stated to designate the character of the instrument as well as the classification of the component entities and persons that are described therein. * * *

"The evidence shows that the owners of beneficial interest frequently sold the same, and that a legal form was provided for the purposes of sale and transfer, and it appeared that ten units were assigned during the calendar year 1928, and that there were other units assigned by the owners for collateral purposes. It is true that the enterprise sold only one lot during the year 1926, but during that period the sales agency was actively engaged in an effort to dispose of the unsold lots, and that in the period approximately $340,000 was collected on lot sales, interest, etc., and that the total expenses for administration for the same period amounted to approximately $30,000. It is unnecessary to review all of the evidence as to the financial operations of the enterprise. Suffice it to say that it was a very profitable venture, and resulted, not only in the payment in full of all obligations incurred on account of the purchase, improvement, subdivision, and sale of the tract of land, but, in addition, made a handsome profit to all who invested or were interested in the enterprise."

The problem to be solved in this litigation is whether or not the appellant is an association within the meaning of the act of Congress above referred to. Section 701 (a) (2) of the Revenue Act of 1928 (26 USCA § 2701 (a) (2). This subdivision of the Revenue Act is a re-enactment without change of language used in the Revenue Acts of 1918, 1921, 1924 and 1926. After the enactment of the Revenue Act of 1918, the Commissioner of Internal Revenue, acting under the authority and direction of said act requiring him to prescribe and publish all needful rules and regulations for the enforcement of the act, adopted articles 1502 and 1504, amended August 31, 1925, of regulation 65 pertaining to the Revenue Act of 1924, articles 1502 to 1504 of regulation 60 pertaining to the Revenue Act of 1926, which are identical with articles 1312 and 1314 adopted under the Revenue Act of 1928. In view of the adoption of these interpretative regulations by the Commissioner, Congress, in the adoption of the Revenue Act of 1928, must be deemed to have considered and adopted the interpretation placed upon the statute by the Commissioner of Internal Revenue, in a matter as indefinite as the definition of "an association." Upon this subject, the Supreme Court, in an opinion written by Justice Butler, in Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 117, 74 L. Ed. 457, stated:

"It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Logan v. Davis, 233 U. S. 613, 627, 34 S. Ct. 685, 58 L. Ed. 1121; Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297; Swendig v. Washington Water Power Co., 265 U. S. 322, 331, 44 S. Ct. 496, 68 L. Ed. 1036. * * *

"The regulations promulgated under that section are substantially the same as the earlier regulations. Regulations 65, art. 1594; Regulations 69, art. 1594. The substantial re-enactment in later acts of the provision theretofore construed by the Department is persuasive evidence of legislative approval of the regulation. National Lead Co. v. United States, 252 U. S. 140, 146, 40 S. Ct. 237, 64 L. Ed. 496; United States v. Cerecedo Hermanos y Compania, 209 U. S. 337, 339, 28 S. Ct. 532, 52 L. Ed. 821; United States v. G. Falk & Brother, 204 U. S. 143, 152, 27 S. Ct. 191, 51 L. Ed. 411. The subsequent legislation confirmed and carried forward the policy evidenced by the earlier enactments as interpreted in the regulations promulgated under them."

The regulations referred to first adopted, in their present form, by the amendment of Regulation 65, August 31, 1925, are as follows:

"Art. 1312. Association. Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to state laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has vested in the business or property of the organization. A corporation which has

ceased to exist in contemplation of law but continues its business in quasi-corporate form is an association or corporation within the meaning of Section 701.

"Art. 1314. Association Distinguished from Trust. Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by Section 161–170 and by Articles 861–891. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of Section 701. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the act."

These regulations in the present form are said to be based upon the decision of the Supreme Court in Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 467, 68 L. Ed. 949 (1923) dealing with the Revenue Acts of 1916 and 1918. The court in that case said:

"We think that the word 'association' as used in the Act clearly includes 'Massachusetts Trusts' such as those herein involved, having quasi-corporate organizations under which they are engaged in carrying on business enterprises. What other form of 'associations,' if any, it includes, we need not, and do not, determine. * * *

"We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918; this being true independently of the large measure of control exercised by the beneficiaries in the Hecht and Haymarket Cases, which much exceeds that exercised by the beneficiaries under the Wachusett Trust. We do not believe that it was intended that organizations of this character—described as 'associations' by the Massachusetts statutes, and subject to duties and liabilities as such—should be exempt from the excise tax on the privilege of carrying on their business merely because such a slight measure of control may be vested in the beneficiaries that they might be deemed strict trusts within the rule established by the Massachusetts courts."

If we accept, as we think we should, the interpretation placed upon the word "association" by the Commissioner of Internal Revenue, inferentially approved and adopted by Congress in subsequent legislation, based upon the decision of the Supreme Court in Hecht v. Malley, supra, it follows that there are two criteria for determining whether or not an organization or combination of individuals is taxable as an association. The first test found in article 1312 is the business test; that is to say, the test as to whether or not the organization formed "to do business in an organized capacity" and for the distribution of the profits among the shareholders in proportion to the investment or shares. The second test, contained in article 1314, is for the purpose of distinguishing an association from a trust, and depends upon the question of whether or not "the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees, or otherwise." It appears from the terms of the trust, as stated in the foregoing excerpts from the memorandum opinion of Judge McCormick, that, while the ordinary business of the trust or association is carried on by agents designated in the trust and appointed by the trustees, the board of managers had at all times effective control of the business, and that the beneficiaries of the trust had the control over the syndicate managers indicated as the test in article 1314; that is, they had the power to select the managers. The language of the declaration of trust in that regard is as follows: "That said Board of Syndicate Managers shall consist at the outset of John T. Cooper, H. H. Cotton, Godfrey Edwards, Otto G. Wildey, and C. C. C. Tatum, and until the Trustee receives a notice in writing, signed by beneficiaries holding at least three-fourths of the entire number of said units of beneficial interest, changing the personnel of said board of syndicate managers, the trustee shall act upon the written direction of any three (3)

of said named persons; but from and after receipt by it of such notice in writing notifying it of change in personnel of said board of syndicate managers, it shall act only upon the written directions of any three (3) of the persons comprising said board of syndicate managers as changed by such written notice."

It would seem clear that under the terms of the declaration of trust, the syndicate, organized for the purpose of purchasing, subdividing, improving, and selling, a large tract of land, was engaged in doing business for profit, and that the trust was distinguishable from a simple trust by reason of the control exercised over matters of its management and business by the board of managers and beneficiaries.

The appellant contends, however, that notwithstanding the existence of such powers they were not actually exercised during the tax year 1928, and that the true test is whether or not such powers were exercised, citing Gardiner v. United States (C. C. A.) 49 F.(2d) 992, 996. The answer to this contention, we think, is found in the statement of facts by the trial court as to the business done in the year 1928. Under these circumstances, it can hardly be said that the powers of the managers or beneficiaries were not exercised during that time. The business of the association was active and was participated in by the agents and managers thereto authorized.

The appellant insists that the enterprise of the syndicate here involved was a joint adventure, citing 33 C. J. 841; Peterson v. Nichols, 90 Wash. 398, 156 P. 406; Sander v. Newman, 174 Wis. 321, 181 N. W. 822; Central Trust Co. v. Creel, 184 Ky. 114, 211 S. W. 421; Camp v. U. S., 15 Ct. Cl. 469; Barton v. Wamsley, 194 Iowa, 591, 190 N. W. 18; Discus v. Scherer, 277 Ill. 168, 115 N. E. 161.

Of course it is quite immaterial as to whether or not the organization under consideration is a joint adventure within the meaning of that term as defined by the foregoing authorities. The question here is whether or not the organization is an association within the meaning of that term as used by Congress in its revenue laws. Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. It is claimed, however, by the appellant that this distinction between a joint adventure and an association has been recognized in the administration of the revenue law, and, to sustain this proposition, appellant cites

Appeal of Florida Grocery Co., 1 B. T. A. 412; Appeal of Ernest Woodruff, 4 B. T. A. 842; Alger Melton v. Commissioner, 7 B. T. A. 717; also Article 1317 of Regulations 74, Revenue Act of 1928, as follows: "Joint ownership, joint investment in, and ownership of real and personal property not used in the operation of any trade or business and not covered by any partnership agreement, does not constitute a partnership. Co-owners of oil lands engaged in developing the property through a common agent are not necessarily partners."

In E. A. Landreth Co. v. Commissioner, 11 B. T. A. 1, the Board of Tax Appeals held that the agreement under which funds were secured by the owner of an oil lease for the development of property was a joint adventure and not an association.

In Myers, Long & Co. v. Commissioner, 14 B. T. A. 460, it was held that persons associating themselves for the development of oil and gas lands without definite organization did not constitute a corporation within the meaning of section 1 of the Revenue Act of 1918 (40 Stat. 1057), and section 2 of the Revenue Acts of 1921 (42 Stat. 227) and 1924 (43 Stat. 253, 26 USCA 1262) but were joint adventurers and must be taxed as individuals. Similar ruling was made in Royal Syndicate v. Commissioner, 20 B. T. A. 255. In Sugg v. Hopkins (C. C. A.) 11 F.(2d) 517, it was held that there was no partnership for the handling of 10,000 sheep jointly owned. In McCausey v. Burnet, 60 App. D. C. 201, 50 F.(2d) 491, a syndicate to purchase bank stock was held to be a joint adventure and not an association.

These cases indicate that there are some joint adventures which are not associations within the meaning of the revenue law, but they are far from sustaining the proposition that all joint adventures are not taxable as associations. Every association of individuals, whether a partnership or corporation or syndicate, is in a broad sense a joint adventure, although not strictly such within the meaning of that term as usually employed in text-books and judicial opinions. In determining whether or not a joint adventure is taxable as an association, we must look to the nature of the business and character of the organization to determine whether or not it is taxable.

It is claimed by the appellant that the enterprise does not sufficiently resemble a corporation to justify being classed as a corporation. This is a mere restatement of

the proposition that the organization under consideration is not an association within the meaning of the statute. We have recently had occasion to consider the question of whether or not a trust created for liquidation of the affairs of a corporation was an association within the meaning of the statute. Commissioner v. Atherton (C. C. A.) 50 F.(2d) 740. Our decision in that case is cited as authority for the proposition that the organization in the case at bar is not taxable, because in legal effect it is a liquidating organization. An examination of the two trusts indicates clearly that there is a very definite distinction in the case at bar; the trust or syndicate or association was organized for the purchase and sale of a tract of land which was to be improved for the purpose of rendering the land salable and augmenting the profits to be derived therefrom. In the trust under consideration in Commissioner v. Atherton, supra, the sole and only purpose of the trust was to convey to these trustees assets which could no longer be profitably held by the public utility corporation in connection with its business as a public utility. Other differences can be readily ascertained by an examination of the decision in that case.

Appellant cites in his brief a number of cases in which the Board of Tax Appeals has distinguished between an association and a joint adventure or partnership. We think it unnecessary to consider these cases separately, or determine their applicability to the case at bar. It is sufficient in that regard to call attention to a more recent decision of the Board of Tax Appeals in passing upon the taxability of a California subdivision real estate syndicate similar to that involved here. Sloan v. Commissioner (Prentice Hall Fed. Tax Serv., 1931, p. 1831) 24 B. T. A. 61. The trust was held to be an association taxable under the internal revenue laws, and, in that connection, the Board of Tax Appeals stated: " * * * The courts and this Board have uniformly held that a trust operating a business for profit is an association taxable as a corporation. * * * Up to the date of the declaration of trust, only two, if any, of the beneficiaries herein were owners of any interest in the parcel of land. * * * Everything in the record indicates that the beneficiaries herein entered into a voluntary association for the purpose of acquiring, subdividing, improving and selling Dominguez Harbor Tract No. 2, with the expectation of realizing a profit therefrom."

Appellant contends that this latest deci-

sion of the Board of Tax Appeals is contrary to the current trend of the decisions of the Board and of the courts. It is sufficient to say that this opinion was deliberately arrived at, and represents the present view of the Board of Tax Appeals upon the exact question here involved.

We conclude that the association, or syndicate, organized for the purpose of subdividing the 90 acres of land in question, was an association within the meaning of the Revenue Law of 1928, doing business as such during the year 1928, and taxable as an association.

Judgment affirmed.