## MERCHANTS' TRUST CO. v. WELCH, Collector of Internal Revenue.

### No. 6763.

Circuit Court of Appeals, Ninth Circuit.

June 13, 1932.

Miller, Chevalier, Peeler & Wilson, Melvin D. Wilson, Gibson, Dunn & Crutcher, and Henry F. Prince, all of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Ignatius F. Parker, and Alva C. Baird, all of Los Angeles, Cal. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is an action to recover an income tax paid for the calendar year 1928. The tax

was assessed and collected upon the theory that the appellant was an association within the meaning of section 701 (a) (2) of the Revenue Act of 1928, 26 USCA § 2701 (a) (2). The facts were stipulated in the trial court, and upon this stipulation the court made findings as follows:

"1. H. H. Cotton, who had been engaged in the real estate business in and around the city of Los Angeles, California, for a great many years, entered into a contract with the Rodeo Land and Water Company to purchase a tract of land comprising approximately 190 acres, for the sum of $242,314.00. The purchase contract was transferred to the Hellman Commercial Trust & Savings Bank as trustee, and the trust was designated 123.

"II. One C. C. C. Tatum desired to purchase a portion of the land involved in Trust 123 for the purpose of subdivision and sale and interested nineteen other persons, including H. H. Cotton, and caused the Merchants Trust Company to enter into a contract to purchase approximately 136½ acres of the land from the Hellman Commercial Trust & Savings Bank for the sum of $320,785.00. H. H. Cotton, as the principal beneficiary of Trust 123, approved the contract for the seller, and C. C. C. Tatum approved the contract for the buyer. The Merchants Trust Company held the purchase contract as trustee for the 20 persons interested in the enterprise. The trust was designated as Trust No. 123-B N. S. The last-named trust, a copy of which was attached to and made a part of plaintiff's complaint, was executed on the 1st day of July, 1922. The tract of 136½ acres acquired by the Merchants Trust Company, as trustee, acting for the syndicate of 20 persons, referred to above, was located within what is now the present corporate limits of the city of Beverly Hills, California. The motivating purpose of this trust was to subdivide into city lots, improve and sell the tract above referred to, to the profit of the beneficiaries interested therein.

"III. Both H. H. Cotton and C. C. C. Tatum were substantially interested in the trust as beneficiaries. The latter individual became exclusive sales agent for the trust, and was authorized to and did promote the enterprise of improving, subdividing and selling the property.

"IV. The amount to be paid for the one hundred thirty-six and one-half acres involved was $320,785.00, payable in five (5) yearly installments, the first of which became due in May, 1923. All of the installments were for the sum of $50,000.00 each, except the last and final payment, which became due on May 9, 1927, which was for the sum of $70,785.00. All of the deferred payments bore interest from May 9, 1922, at the rate of six per cent (6%) payable semiannually.

"V. There were associated with Mr. Tatum and Mr. Cotton in this enterprise, eighteen (18) other beneficiaries, each owning beneficial interests of from five to ten one hundred fiftieths (5 to 10/150ths)."

"VII. That the Commissioner of Internal Revenue ruled that the plaintiff herein was transacting business in the form and manner ordinarily adopted by corporations, and that it constituted, during the year 1928, an association, and was taxable for said period as a corporation, and directed the trustee to file, on behalf of said trust, a return for the calendar year 1928, on form #1120, the income tax return employed by corporations, and to pay tax on any income shown thereon at the rate of 12 per centum."

"XII. That the map indicating the lots and specifying the streets was recorded June 26, 1922. Such map was prepared in March, 1922, but the surveying of the land and the preparation of the map was paid for by this trust after its execution.

"XIII. That the minimum restrictions to be imposed upon the buyers of lots sold by this trust were fixed by the seller of the land to this trust, namely, Hellman Commercial Trust and Savings Bank and Minna A. Newman, who was acting for H. H. Cotton.

"XIV. The beneficiaries of Trust 123-B N. S. never had a formal meeting at which they voted on any question pertaining to the business of the trust, or gave instructions to Mr. Tatum or the trustee. Mr. Tatum has remained the attorney-in-fact, and the sales agent since the inception of the trust and has superintended the development of the property and the sale of the lots during that period.

"XV. The trust never acquired more than the original lots specified and set forth in the declaration of trust.

"XVI. The trust had no specific name other than Trust 123-B N. S., given to it by the trustee on its records. It had no by-laws, seal, stationery, officers, other than the attorney-in-fact and the sales agent, and it did not have any place of business except that the trustee had its own place of business.

"XVII. In 1928 no improvements were made, no maps recorded, and no streets dedicated.

"XVIII. The trustee required any and all instructions from Mr. C. C. C. Tatum to be given in writing. Mr. Tatum conferred with, and received the approval of the trustee before making expenditures for improvement, and conferred with, and received the approval of Mr. H. H. Cotton, relative to increasing the minimum building restrictions imposed on lot purchasers.

"XIX. That the total acreage in the lots involved in Trust No. 123-B N. S. was one hundred thirty-six and one-half (136½) acres within the county of Los Angeles, California, all of said land now being included within the corporate limits of the city of Beverly Hills; that said lots were acquired by Trust No. 123-B N. S. for the purpose of improvement and sale of the lots in the subdivision.

"XX. Units of beneficial interests were sold to the other beneficiaries for the purpose of raising additional capital to facilitate the development, improvement and sale of the tract; all of said beneficiaries purchased said units of beneficial interests for the purpose of making a profit. The beneficiaries received certificates of beneficial interests in the form set forth in Exhibit H. The beneficiaries were entitled to and did receive, upon request, information from the trustee or the sales agent relative to the development and sale of the lots comprising the tract of land held by the trust.

"XXI. That some of said beneficial interests were sold, transferred and assigned by the holders thereof, or pledged as collateral security for the payment of money or the performance of other obligations.

"XXII. That the necessary improvement and development made on said tract by said trust consisted mainly of grading, rolling and oiling streets, constructing curbs and sidewalks, and installing a water system (including the drilling of wells) for use in the development of the tract and for the domestic use of the lot purchasers.

"XXIII. That a sales office was maintained on said tract by the sales agent, the property advertised for sale, and a force of sales agents engaged who operated under the direction of C. C. C. Tatum; that during the year 1928 the sales force was reduced to that of a tract manager, but that a continuous effort has been made from the inception of the trust, to date, to dispose of the remaining lots in the tract.

"XXIV. The evidence submitted discloses that this syndicate, known as Trust No. 123-B N. S., was, during the taxable year 1928, engaged in business. At the inception of the trust there were six hundred eighty-five lots sold. Three of these were sold in 1928, and the trust had on hand for the purpose of sale forty-six and one-half (46½) lots at the close of the last-named year. The management, control and sale of the lots was vested in the beneficiaries, and the Merchants Trust Company, as trustee, was authorized to act upon the order of the beneficiaries holding a majority of beneficial interests. The beneficiaries appointed C. C. C. Tatum 'as their and each of their attorney-in-fact to represent them in all matters affecting said buyers in connection with this trust. * * *' However, the trustee was authorized to act upon the exclusive order of Tatum, subject, however, to the right of the majority of holders of certificates of beneficial interests to remove Tatum as attorney-in-fact. In addition to the initial investment by the holders of certificates of beneficial interests, two assessments were made for the purpose of defraying outstanding obligations, amounting to the sums of $17,499.27 and $75,000.99, respectively. For the purpose of making these assessments assessment notices were sent to the certificate holders. A copy of the form of notice used for this purpose was introduced in evidence as Exhibit 'I.' A distribution of the proceeds to the holders of certificates of beneficial interests, up to and including December 31, 1928, totaled $745,900.00."

The trial court, upon the authority of our decision in Trust No. 5833, Security-First National Bank of Los Angeles, Successor to Security Trust & Savings Bank, Trustee, v. Welch, 54 F.(2d) 323, held that the organization was an association within the meaning of the Revenue Act of 1928. The appellant seeks to distinguish the facts in this case from those involved in Trust No. 5833, etc., 54 F.(2d) 323, supra. The distinctions pointed out by appellant are that Trust No. 5833 was to create a subdivision trust, while it is contended that in the case at bar there was an existing subdivision trust and the appellant was organized to take over and liquidate a portion of the property held in the original subdivision trust, and it is also claimed that there is nothing akin to a board of directors in the case at bar; that most of the steps to be taken were fixed by the trust; that "the adventure was limited to the original lots, upon the sale of which the proceeds were required to be distributed. Any problems remaining, after all these specific provisions and instructions were to be solved by the ben-

eficiaries who appointed Mr. Tatum as their agent to exercise their restricted powers." It is also suggested that there is a substantial difference between a board of five syndicate managers, as in the case of Trust No. 5833, and the case of a single agent holding a power of attorney for the beneficiaries.

We find nothing in these points which differentiates the situation disclosed by the record from that involved in Trust No. 5833, supra, and the principles enunciated in that case are applicable to the facts here.

Judgment affirmed.